OPINION OF THE COURT
Kaye, J.
A person "is guilty of public lewdness when he intentionally exposes the private or intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place, or (b) in private premises under circumstances in which he may readily be observed from either a public place or from other private premises, and with intent that he be so observed.” (Penal Law §245.00.) Respondents were separately charged with having violated section 245.00 (a) by committing sexual *628 acts in parked cars in the City of Buffalo. The sole question presented by this People’s appeal is whether the informations sufficiently alleged that lewd conduct occurred in a "public place” within the meaning of the statute. No constitutional issue is raised, nor is the characterization of respondents’ conduct as lewd challenged.
We agree with respondents that the factual allegations were insufficient to establish the statutory element of a "public place,” and therefore affirm County Court’s order dismissing the prosecutions.
I.
The information against respondent Cheryl McNamara charged that on September 27, 1989, at or about 1:50 a.m., "while at 291 15th Street, a public place * * * in the rear seat of a 1989 Ford” she exposed private parts of her body while engaged in sexual intercourse with another person, and that the "vehicle in which the defendant was seated, was parked in a well lit area, and its interior was readily visible to passerbyers.”
Separate informations filed against respondents Rose Marie Terrell and Martyn D. Hill charged that on December 5, 1989, "while at 34 Colorado, a public place * * * seated in a 1988 Ford Bronco II” respondent Terrell committed a sexual act upon respondent Hill, and that those "actions were being committed on a public residential street.” The information against respondent Alma Harrison charged that on December 5, 1989, at or about 12:45 a.m., "while at 70 Colorado, a public place * * * in the passenger seat of a GMC Jimmy truck” respondent committed a sexual act upon another person while "parked in a well lit residential area.”
Buffalo City Court dismissed all four informations. The McNamara information was deemed insufficient because it alleged "no facts which would show that the defendant intentionally exposed the private or intimate parts of her body in a lewd manner, with intent that she be so observed.” The court also stated that it was "preposterous” that the lewd exposure charged in the information had as its purpose "public entertainment, in turn to titillate the defendant.” The court dismissed the Harrison information because the allegation that the acts occurred in a vehicle parked in a well-lit residential area did not establish a "public place” under Penal Law § 240.00. The Terrell and Hill informations were found insuffi *629 cient on the grounds that the area of occurrence was not a "public place,” and the prosecution was an attempt to criminalize consensual sodomy (citing People v Onofre, 51 NY2d 476).[1]
After consolidating the four cases for purposes of the People’s appeal, the Erie County Court affirmed the dismissals, apparently on the ground that the informations failed to allege facts supporting the conclusion that the acts complained of occurred in public places. We now affirm.
II.
To be facially sufficient, the factual part of an information must meet two requirements: the allegations must provide reasonable cause to believe that the defendant committed the offense, and the nonhearsay allegations must establish, if true, every element of the offense charged (CPL 100.40 [1] [b], [c]; People v Alejandro, 70 NY2d 133, 136-137). This case calls upon us to determine whether the informations charging respondents with public lewdness were facially defective because they failed to establish the statutory element that respondents’ acts were committed in a "public place” (Penal Law § 245.00 [a]).
At the core of this statutory interpretation question is the relevance of respondents’ intent concerning whether a place is "public.” The statutory requirement of intent to expose private or intimate bodily parts lewdly, or to commit a lewd act, is not in question.
The People contend that the informations satisfied the statute by alleging that respondents engaged in sexual activity in parked cars on Buffalo streets, and no intent that one be observed is required. Respondents, by contrast, urge that "public place” as used in this statute imports such a degree of "publicness” as to require intent that they be observed or reckless disregard that they might be observed. City Court, in dismissing the McNamara and Hill informations, relied on an even broader understanding of intent requiring not only intent to be seen, but a purpose "for public entertainment, in turn to titillate the defendant.” As these differing understandings of "public place” demonstrate, in the context of this statute the phrase has no single readily ascertainable "plain meaning.”
*630 Penal Law § 245.00 does not itself define "public place,” nor does the remainder of article 245 — in which the section is situated — define the term, even though the words "public place” appear in other article 245 offenses (Penal Law §§ 245.01, 245.02).
The People ask us to adopt the definition found in the immediately preceding article — article 240, "Offenses Against Public Order.”[2] However, section 240.00 specifies that its definitions are "applicable to this article,” signalling at the outset that they are inapplicable to article 245 ("Offenses Against Public Sensibilities”), which is directed to offenses against "public sensibilities,” not "public order,” and proscribes different conduct (see, Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.00, at 249 [1980]). We likewise reject the People’s argument that the definition of "public place” should be drawn from Fourth Amendment decisions holding that there is a diminished expectation of privacy in automobiles. Plainly, the existence of a diminished expectation of privacy does not transform the interior of an automobile into a "public place.”
While not offering an explicit definition of "public place,” section 245.00 read in its entirety does suggest that mens rea in the form of intent to be observed, reckless disregard of observation, or intent to arouse or gratify sexual desires by means of public observation is not required by section 245.00 (a). The crime is defined as a lewd exposure or act "(a) in a public place, or (b) in private premises under circumstances in which [the actor] may readily be observed from either a public place or from other private premises, and with intent that he be so observed.” The placement of the phrase "with intent that he be so observed” after subdivision (b) rather than at the start of the section indicates that intent to be observed is required only in cases involving private premises, not public places. The structure of the section thus tends to contradict respondents’ claim that lewd conduct is not performed in a "public place” unless the actor intends to be observed or has some other culpable mental state regarding observation by others.
*631 This conclusion is borne out by the legislative history, which is additionally instructive in determining what factual allegations are necessary to satisfy the statute. In approaching legislative history, we bear in mind that statutes "punishing indecent exposure, though broadly drawn, must be carefully construed to attack the particular evil at which they are directed.” (People v Price, 33 NY2d 831, 832.)
Penal Law § 245.00 was part of an over-all revision of the Penal Law — based on recommendations by the Temporary State Commission on Revision of the Penal Law and Criminal Code — which reorganized specific offenses and grouped like offenses together.[3]
As originally enacted, article 245 consisted of two offenses: public lewdness and offensive exhibition. An amendment prior to its effective date added two more — exposure of a female and promoting the exposure of a female (L 1967, ch 367; now "exposure of a person” and "promoting the exposure of a person” [Penal Law §§ 245.01, 245.02]). Finally, addition of public display of offensive sexual material in 1971 (Penal Law §§ 245.10, 245.11) gave the article its present form.
Viewing these separate components of article 245 together, it is obvious that article 245 was aimed at protecting the public — in essence, "unsuspecting, unwilling, nonconsenting, innocent, surprised or likely-to-be offended or corrupted types of viewers” (People v Conrad, 70 Misc 2d 408, 410) — from the sight of offensive activities and materials (People v Hollman, 68 NY2d 202, 207 [Penal Law § 245.01]; People v Craft, 149 Misc 2d 223, 225 [same]; see also, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 245.00, at 296 [1989]). Thus it is clear that the evil at which section 245.00 (a) is directed is the offense created by the proscribed displays rather than the culpable mental state of persons engaging in them. When the actor’s intent was to be relevant — as in the prosecution of lewd acts in private places — the Legislature made that express (Penal Law § 245.00 [b], added by L 1968, ch 748).
Respondents urge that a draft of the revised Penal Law circulated as a study bill by the Commission before enactment of the revised Penal Law supports their view that an informa *632 tian charging a violation of section 245.00 (a) must demonstrate the actor’s intent to be observed (S Intro 3918, A Intro 5376; 1964 [vol 15] NY Senate Bills, at 184-186). That draft classified public lewdness as a form of disorderly conduct, requiring an intent "to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,” and as a form of harassment, requiring an intent "to harass, annoy or alarm another person.” (Proposed NY Penal Law §§ 250.05, 250.10, reprinted in McKinney’s Cons Laws of NY, 1964 Spec Pamph.) They contend that these intent elements carried over into Penal Law § 245.00 as it was subsequently enacted.
Respondents’ argument is unpersuasive, and indeed invites the contrary conclusion. Most significantly, the study bill was not enacted by the Legislature, despite State-wide hearings and extensive public comment (Fourth Interim Report of State of NY Temp Commn on Revision of Penal Law and Criminal Code, Feb. 1, 1965, 1965 NY Legis Doc No. 25, at 9). Moreover, the study bill made public lewdness a category of disorderly conduct and harassment, within "Offenses Against Public Order” (Third Interim Report of State of NY Temp Commn on Revision of Penal Law and Criminal Code, 1964 NY Legis Doc No. 14, reprinted in 1964 McKinney’s Session Laws of NY, at 2024). As subsequently enacted, however, public lewdness was made a separate offense within "Offenses Against Public Sensibilities.” It is apparent from this placement that the intent elements of disorderly conduct and harassment were eliminated from the offense of public lewdness, and that in the codification the newly created offense of public lewdness was regarded as belonging to a different classification of crimes.
Respondents point to decisions under the predecessor statute, Penal Law § 1140, as additional support for their argument that intent to be observed is a necessary element under Penal Law § 245.00 (a). However, the language df former section 1140, which required that acts be done "wilfully and lewdly,” is materially different from that of present section 245.00 (a) with respect to mental culpability. For that reason, decisions under former section 1140 — and indeed those of other States under similar but not identical statutes — are of limited pertinence in the present analysis.
We therefore conclude that the actor’s intent is irrelevant to determining what is a "public place” under Penal Law § 245.00 (a).
*633 III.
While rejecting respondents’ argument that a mens rea is required with respect to "public place,” we cannot accept the People’s contention that allegations of sexual activity in parked cars at stated addresses alone satisfy the statute. Indeed, were we to accept the People’s contention we would in effect be adopting the definition of "public place” found in article 240 — "a place to which the public or a substantial group of persons has access.” The Legislature chose not to make that same broad definition applicable to article 245; nor should we.
Our review of the statute, including its purpose and background, persuades us that, contrary to the People’s argument, more than public access to a street is necessary for the interior of a parked vehicle — which may be wholly shielded from outside viewing — to be considered a "public place” under Penal Law § 245.00 (a). Obviously, places that are public in a property sense can be very private in terms of the likelihood of casual observation. Though both may be "public,” for example, the interior of a vehicle parked on the side of a desolate road is not a "public place” in the same sense that the interior of a car parked at a busy downtown shopping area might be. And between these two examples exist a wide variety of locales that may be classified as more or less "public.”
Because the term "public place” has no cut-and-dried meaning, it is necessary to interpret and apply the statute here in a manner that comports with its purpose. As has been observed in an analogous context, since "the rationale of this provision is to prevent the open flouting of societal conventions, it should not condemn as debauchers of public morality persons who desire privacy and who take reasonable measures to secure it.” (Model Penal Code and Commentaries, part II, § 251.1, comment 2, at 452 [ALI 1980].)
That a member of the public may pass by is certainly part of the essence of a public place, and the harm to such a person’s sensibilities is precisely that aimed at by the statute. Conversely, where no such harm is likely, the statute is not violated. We therefore conclude that the interior of a parked vehicle is a "public place” for purposes of this subdivision where the objective circumstances establish that lewd acts *634 committed there can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect.[4]
Thus, the interior of a vehicle parked at a stated address is not itself a "public place,” but it may become one under circumstances indicating that the car’s interior is visible to a member of the passing public, and that the vehicle is situated in a place where it likely would be observed by such a person.
IV.
Applying this definition to the facts at hand, it is clear that none of the informations before us describes a "public place” under the statute.
The McNamara information comes closest to being sufficient. It alleges that respondent’s acts could be observed, in that the vehicle was parked in a well-lit area and its interior was readily visible to the casual passerby. However, the information failed to establish that the vehicle was situated in a place where it was likely that respondent’s lewd acts would be observed by such a person. The information alleged only that respondent’s acts were committed in a parked car in a "public place” (the statutory words), not that the car was on a street where people resided or otherwise might encounter it. That the information referred to "291 15th Street” does not cure this deficiency; as respondent points out, the address could as readily refer to a private driveway as to a residential street.
The remaining informations were also deficient. They failed to establish that respondents’ acts were capable of observation, as they did not indicate that the vehicle interiors were visible to passersby; the Terrell and Hill informations did not even allege that their vehicle was parked. Thus, none of the informations under review contained sufficient factual allegations to establish reasonable cause to believe that respondents committed the offense of public lewdness, or to establish every element of that offense. The informations were therefore properly dismissed.
Finally, we note that the dissent’s fears that the streets are transformed into "sanctuaries of such criminal activity” (dis *635 senting opn, at 637), or sex in parked cars exempted from prosecution (dissenting opn, at 636), are without basis. Sexual acts performed in parked cars on public streets may be prosecuted as public lewdness when the circumstances are such that the vehicles may be considered a "public place” — in other words, when the objective circumstances establish that the lewd acts committed there can and likely would be seen by the casual passerby. This is not a "new element” (dissenting opn, at 637). It is a requirement that objective facts be alleged indicating that the harm aimed at by the statute has occurred.
Accordingly, the order of the Erie County Court should be affirmed.

. County Court, in affirming the dismissal, did not reach the consensual sodomy issue, nor do we.

. " 'Public place’ means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.” (Penal Law § 240.00 [1].)

. The section replaced Penal Law § 1140, which provided that a person "who wilfully and lewdly exposes his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another so to expose himself, is guilty of a misdemeanor.”

. While the dissent takes us to task for not applying the "plain meaning” of "public place,” significantly no definition of the term is offered. By setting out objective criteria that implement the statute’s language and purpose, the Court avoids the approach of defining "public place” by — in effect — you know it when you see it.