OPINION OF THE COURT
Robert Charles Kohm, J.
The defendant, Kenneth Gaines, and codefendant, John Grahms, have been indicted for the crimes of criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in or near school grounds. Pursuant to an *924 omnibus motion, the defendant Gaines has moved for an order, inter alia, dismissing the indictment. The People have submitted an affirmation in opposition.
After due deliberation, the defendant’s omnibus motion is decided as follows:
The first and second branches of the motion for a bill of particulars and discovery and inspection are granted to the extent supplied by the People in their response. The People are reminded of their continuing obligation pursuant to Brady v Maryland (373 US 83) and People v Rosario (9 NY2d 286).
The third branch of the motion is granted to the extent that the court has inspected the Grand Jury minutes. Upon inspection, the motion to dismiss is denied as the court finds that legally sufficient evidence was presented to the Grand Jury to sustain the indictment as returned and the Grand Jury was properly instructed on the relevant law.
Defendant has challenged the sufficiency of the evidence, wherein he has been charged with criminal sale of a controlled substance upon school grounds. Defendant asserts that as the felony complaint states that the alleged sale took place inside the lobby of 364 Beach 56 Street, which is not a school, and the indictment does not state that the "sale took place within a certain number of feet”, the indictment must be dismissed.
The facts are as follows:
At or about 5:30 p.m. on September 28, 1995, approximately a couple of hundred feet from P.S. 198, Kenneth Gaines and Undercover Officer 25934 negotiated the sale of cocaine on the sidewalk outside 364 Beach 56 Street, Queens. The codefendant, John Grahms, joined the two on the sidewalk and Gaines told Grahms to give the undercover the drugs. The undercover was then told to go inside the lobby and wait. Grahms asked the undercover for the money and then left the lobby. When Grahms returned, Grahms gave the undercover one clear plastic bag of cocaine and the undercover left the lobby.
In this case of first impression, the question before the court is whether this alleged sale, which was negotiated on the sidewalk and in which the transfer of the drugs and money took place in an apartment house lobby, falls within the conduct proscribed in Penal Law § 220.44 (2) and § 220.00 (14).
For the following reasons, this question is answered in the affirmative.
Penal Law § 220.00 (14) (b) defines " 'School grounds’ ” as "any area accessible to the public located within one thousand *925 feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section, 'area accessible to the public’ shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants.” In the instant case, the negotiations took place on the sidewalk at Beach 56 Street approximately a couple of hundred feet from P.S. 198.
Laws of 1986 (ch 280, § 5) amended Penal Law § 220.44 to enhance the sentence for narcotics sales to those under 19 where the "sale or possession occurs in or on or within 1,000 feet of the real property boundary line” of a public or private elementary, parochial, junior high, vocational or high school. The 1,000 feet would be the equivalent of two city blocks, thus providing a safe corridor for children going to or coming from school (Mem of State Executive Dept. 1986 McKinney’s Session Laws of NY, at 2892).
These amendments to the Penal Law reflected similar amendments to Federal law (21 USC § 845a, now § 860), which survived attacks of constitutionality as " 'overbroad’ ” and " 'not rationally related to the congressional purpose of deterring and punishing those who sell drugs to children’ ”. (Mem of State Executive Dept. op. cit., at 2893.) In United States v Nieves (608 F Supp 1147, 1149-1150 [SD NY 1985]), the court stated: "It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property”.
Laws of 1994 (ch 292) amended Penal Law § 220.44 to delete the requirement that the buyer be under 19 years of age and amended Penal Law § 220.00 (14) to delete from the definition of school grounds "within one thousand feet of the real property boundary line comprising any such school”, and defined the prohibited area.
The purpose of the changes was, first, to eliminate the age of the buyer to qualify for the enhanced criminal penalty (a minimum term of incarceration of two to six years for this class B felony rather than incarceration of one to three years). This change permitted undercover officers, who are over the age limit, to pose as customers. The second purpose of the amendment was to deter illegal drug activities near schools and to provide a safe, drug-free school environment (Governor’s Mem, 1994 McKinney’s Session Laws of NY, at 2969-2970). These *926 changes were enacted to create " 'drug free corridors’ ” around inner-city schools (Mem of Legis Rep of City of NY, 1994 McKinney’s Session Laws of NY, at 2669).
In the summary of provisions in the Memorandum of Legislative Representative of the City of New York (ibid.) it was noted that the proposed amendment would reduce the "definitional distance of school grounds from 1000 to 350 feet”. The Memorandum stated that this change would thus remove many neighborhood parks and playgrounds from statutory coverage and hinder efforts to eradicate drug sellers and users from these sites, thus adversely impacting on the creation of drug-free corridors. Penal Law § 220.00 (14), in its final form, retained the 1,000 foot corridor around schools.
McKinney’s Consolidated Laws of NY, Book 1, Statutes § 76 states that "[t]he uncertainty of sense in a statute, which warrants the application to it of the principles of construction does not originate in uncertainty of expression alone, but may proceed also from the uncertainty caused by an unjust or unreasonable application; and, if a statute viewed from the standpoint of the literal sense of the language, works an unjust or unreasonable result, an obscurity of meaning exists which calls for judicial construction.”
A literal and exclusionary interpretation of Penal Law § 220.00 (14) (b) would mean that criminal sale of a controlled substance in or near school grounds could be prosecuted only if the completed sale took place on sidewalks, on streets, or in parking lots, parks, playgrounds, stores or restaurants. However, this court finds that such an interpretation would work an unjust or unreasonable result, as the legislative intent was to include "any area accessible to the public.”
In People v McNamara (78 NY2d 626, 630, n 2), the Court defined a " ' "Public place” ’ ” in Penal Law § 240.00 (1) offenses against public order as "a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence”. The Court stated: "Because the term 'public place’ has no cut-and-dried meaning, it is necessary to interpret and apply the statute here in a manner that comports with its purpose.” (People v McNamara, supra, at 633; see also, People v Powell, 54 NY2d 524, 526 [in which the Court concluded that a lobby is a place " 'to which the public or a substantial group of persons has access’ ”].)
*927 In the instant case, the alleged negotiations as to the terms of the sale, type of drug, price and quantity took place on the sidewalk. Grahms was given the "okay” by Gaines, and only then was the undercover told to go into the lobby. It is undisputed that the alleged sale was consummated in the lobby, which defendant asserts is not within the area proscribed by the statute. However, because a literal interpretation of Penal Law § 220.00 (14) (b) obscures the meaning of the statute and would cause an unjust result (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; People v Powell, supra), the court construes the statute to mean that a lobby is included in the meaning of "any area accessible to the public” especially where, as here, the sale was negotiated on the sidewalk and only the perfunctory part of the sale took place in the lobby.
Based on the foregoing analysis, this court finds that the clear intent and general purpose of the statute is to create "drug free corridors” around schools (People v McNamara, supra). The court further finds that the lobby of an apartment house is a public place as accessible to the public from the sidewalk as a store or a restaurant or a parked automobile or other parked vehicle would be accessible from the sidewalk.
If the court were to dismiss the second count of the indictment because illegal activity began on a street and terminated in the lobby of a building, the clear intent of this statute to provide drug-free corridors for our children would be thwarted (People v McNamara, supra; see, People ex rel. Jackson v Potter, 47 NY 375, 379). People could then be approached on the street near a school to purchase drugs, and the mere entering of a lobby to consummate the sale would frustrate the purpose of this section.
Accordingly, the court concludes that the People met their burden of proving that the incident occurred within 1,000 feet of the real property line comprising a school (Penal Law § 220.00 [14]).
That branch of the motion to dismiss the indictment for facial insufficiency, in that the indictment does not state that the sale took place within a certain number of feet, is denied. The court finds that the indictment conforms to CPL 200.50 (7).
The fourth branch of the motion to release the Grand Jury minutes and charge to defense counsel is denied as the court does not find that such release is necessary to assist it in making a determination on the motion (CPL 210.30 [3]).
The fifth branch of the motion to suppress physical evidence allegedly seized from the defendant’s person, to wit: a sum of *928 United States currency, is granted to the extent that a Mapp/ Dunaway hearing shall be held on March 12, 1996.
The sixth branch of the motion is granted to the extent that a Wade hearing shall be held in conjunction with the Mapp/ Dunaway hearing.
The seventh branch of the defendant’s motion to reserve the right to make further motions is granted to the extent permitted pursuant to CPL 255.20.