OPINION OF THE COURT
Joseph J. Dawson, J.
The defendants in these cases have been charged with public lewdness in violation of section 245.00 (a) of the Penal Law. Defendant Frank S. also has been charged with exposure of a person in violation of section 245.01 of the Penal Law. All three cases involve incidents of sexual conduct that allegedly occurred on subway platforms. All three defendants move to dismiss on the theory that the accusatory instruments are facially insufficient.
The accusatory instruments filed against Frank S. and Miguel R. arise from the same incident. In the information filed against Frank S., Officer Miguel Torres alleged that, at about 6:05 p.m. on April 29, 1999, at the Fordham Road subway platform in the Bronx, he saw the defendant “expose his penis to public view, and to allow [Miguel R.] to rub and manipulate defendant’s exposed penis for approximately three (3) minutes.” In the accusatory instrument filed against Miguel R., Officer Torres alleged that, at the same time and place, he saw the defendant “rub and manipulate the exposed penis of [Frank S.] for approximately three (3) minutes.”
In the information filed against defendant Mateo R., Officer Guillermo Barr alleged that, at about 3:15 p.m. on October 4, 1999, at the 138th Street and 3rd Avenue subway platform in the Bronx, he saw the defendant “in a public place on a public subway platform,” and that “defendant took his penis out of his pants and manipulated it by moving his hand up and down over his penis.” Officer Barr also alleged that there were “approximately fifty (50) to sixty (60) people” on the platform.
*624 A person engages in public lewdness, a class B misdemeanor, “when he intentionally exposes the private or intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place, or (b) in private premises under circumstances in which he may readily be observed from either a public place or from other private premises, and with intent that he be so observed.” (See, Penal Law § 245.00.) With respect to all three defendants, the accusatory instruments charge a violation of subdivision (a) of this statute. Thus, each instrument must contain sufficient facts to permit the court to conclude that there is reasonable cause to believe — and nonhearsay allegations to establish — that the alleged conduct occurred in a “public place.”[1] (See generally, People v Alejandro, 70 NY2d 133 [1987].)
The defendants assert that the People have not made a prima facie showing that their alleged conduct occurred in a “public place” within the meaning of the Court of Appeals decision in People v McNamara (78 NY2d 626 [1991]). In particular, defendant Mateo R observes that there is no claim that anyone other than the officer saw his alleged misconduct; defendants Frank S. and Miguel R make the same point, but also emphasize that the accusatory instruments contain no sworn factual details concerning the precise location of their liaison, or the extent to which that spot might have been open to public view or accessible to casual bystanders. In addition, defendant Miguel R. observes that, while subway platforms are “open to the public,” they also encompass large areas that often contain “numerous secluded areas,” including stairways and passageways. Thus, the defendants appear to suggest that, under the Court of Appeals holding in McNamara, the People can state a facially sufficient case of public lewdness only if they set forth factual allegations detailing the extent to which a sexual act on a subway platform could have been observed by casual bystanders.[2]
Section 240.00 (1) of the Penal Law defines a “public place” as “a place to which the public or a substantial group of persons *625 has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.” There can be little question that a subway platform would qualify as a “public place” under this statute, for section 240.00 (2) states that a “transportation facility” is “any conveyance, premises or place used for or in connection with public passenger transportation, whether by air, railroad, motor vehicle or any other method” and “includes * * * railroad cars, buses, and * * * railroad and bus terminals and stations and all appurtenances thereto.” In McNamara (supra), however, the Court of Appeals explicitly held that the Legislature did not intend section 240.00 to apply in prosecutions for public lewdness or any other offenses defined in article 245 of the Penal Law. (See, People v McNamara, supra, at 630.) The Court reasoned that section 240.00, by its very terms, applies only to the “Offenses Against Public Order” that are defined in article 240, not to the “Offenses Against Public Sensibilities,” including lewdness, that are defined in article 245. After examining the language, purpose and legislative history of the latter article, which does not expressly define a “public place,” the Court concluded that the phrase was not intended to have a “cut-and-dried meaning,” and declined to hold that the statutory language in section 245.00 (a) reaches all places to which “ ‘the public or a substantial group of persons has access.’ ” (See, People v McNamara, supra, at 633.)
Instead, the Court held that the reference to a “public place” in section 245.00 (a) must be construed “in a manner that comports with [the] purpose” of the lewdness statute. (See, People v McNamara, supra, at 633.) Because the purpose of section 245.00 is to prevent unsuspecting and unwilling people from being subjected to the sight of activities that would likely offend them (see, People v McNamara, supra, at 631), the Court observed that the phrase “public place” must be interpreted in a way that embodies a likelihood of such harm. (Supra, at 633-634.) Indeed, the Court reasoned, the statute was not intended to reach defendants “ ‘who desire privacy and who take reason *626 able measures to secure it.’ ” (Supra, at 633, quoting Model Penal Code and Commentaries, part II, § 251.1, comment 2, at 452 [ALI 1980].) Thus, the Court concluded, a defendant does not violate the statute if he or she engages in the allegedly offensive conduct in a place where it is not likely that a member of the general public will pass by and be in a position to see it. (See, People v McNamara, supra, at 633-634.)
Applying its analysis to the situations posed in McNamara (supra), the Court observed that the interior of a parked car could, in some circumstances, “be wholly shielded from outside viewing,” but could amount to a “public place” in other situations. (People v McNamara, supra, at 633.) Pointing to two extremes, the Court suggested that, while the interior of a vehicle would not qualify as a “public place” when the car is situated on a deserted street, the lewdness statute could very well apply when the car is “parked at a busy downtown shopping area.” (Supra, at 633.) Recognizing that “a wide variety of locales” could fit between these two extremes, the Court articulated a test for determining the extent to which sexual conduct inside a vehicle would constitute “public” lewdness. (Supra, at 633.) Specifically, the Court held “that the interior of a parked vehicle is a ‘public place’ for purposes of [Penal Law § 245.00 (a)] where the objective circumstances establish that lewd acts committed there can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect.” (People v McNamara, supra, at 633-634.) Finding that none of the informations involved in McNamara contained allegations that the vehicles were on streets “where people resided or otherwise might encounter it,” the Court concluded that it was proper to dismiss them. (Supra, at 634.)
As McNamara (supra) teaches, this court must consider whether, and the extent to which, the accusatory instruments filed in these three cases sufficiently allege “objective circumstances” establishing that the defendants’ conduct could, and likely would, have been seen by casual observers. There is little question that the information filed against Mateo R. meets that test. Not only did the officer allege that the conduct occurred on a subway platform at 3:15 in the afternoon, he also stated that there were scores of people present at the time. Accordingly, there are ample facts from which one could infer a likelihood that a casual passerby would have been in a position to see, and be offended by, the act in question. (See, e.g., People v Davis, 164 Misc 2d 89, 92 [Crim Ct, NY County 1994] [restroom inside bus terminal is a “public place” when individuals *627 other than the defendant are also present].) And, while Mateo R. implies that the People should have supplied supporting depositions from some of the 50 or so people who allegedly were standing on the platform at the time of his offense, that plainly is more than the law requires. At this stage, the People are required to establish a prima facie case, not proof beyond a reasonable doubt. (See, e.g., People v Ensley, 183 Misc 2d 141 [Crim Ct, NY County 1999].)
The accusatory instruments filed against defendants Frank S. and Miguel R. do not contain any allegation that other people were on the platform at the time of the alleged sexual activity. Instead, both pleadings state only that the defendants’ conduct occurred on April 29, 1999, for a period of about three minutes shortly after 6:00 p.m. on the Fordham Road subway platform. The court nonetheless finds that these factual assertions, if true, would satisfy the statutory requirement that the alleged act of lewdness occurred in a “public place.”
In contrast to the situation posed in McNamara (supra), the defendants’ alleged liaison did not occur in a vehicle or other place that, as a general proposition, may be “shielded” from outside observation. (See, People v McNamara, supra, at 633.) The allegations in McNamara described sexual encounters that supposedly occurred inside vehicles in the middle of the night at particular addresses of an unspecified nature. The allegations against Frank S. and Miguel R. describe a sexual encounter that purportedly occurred on a Thursday evening, during rush hour, on a platform of the busiest subway system in the world. The difference, of course, is not just one of degree; it is one of kind. As McNamara holds, a court would need further information in order to assess the extent to which a casual observer might be in a position to see inside a car during the dead of night at a location of an uncertain type. Here, however, nothing more than everyday experience and common sense would be needed to appreciate the fact that, especially during the morning or early evening hours, members of the public tend to see other people on subway platforms in New York City. This being the case, an assertion of lewd behavior on a subway platform at around 6:00 p.m. on a Thursday reveals “objective circumstances” posing a risk of casual observation by passersby. Accordingly, the accusatory instruments in question amply meet the McNamara test.
True, there are no allegations in the informations filed against Frank S. and Miguel R. that the platform was occupied *628 by anyone other than defendants and the arresting officer at the time of the sexual encounter.[3] But, the court does not read McNamara (supra) or the public lewdness statute to require any factual allegation that a bystander actually was present at the time of the offense. Under the McNamara test, the extent to which a particular location amounts to a “public place” requires an assessment of the likelihood that casual observers would encounter the alleged act of lewdness (People v McNamara, supra, at 634, n 4); it does not require police officers to take attendance at the scene. Of course, the number of people on a subway platform can fluctuate frequently. The population on a platform can change slightly with little notice beyond the sound of a few footsteps, or it can shift dramatically following the thunderous rumble of an arriving train. And, whether a train stops or not at a particular station, many pairs of eyes may be gazing from a subway window toward the passengers standing on the platform. Simply put, regardless of the number of people who may be standing in the vicinity at a given moment, there is almost always an objective risk of casual observation within the meaning of the McNamara rule when, as here, an alleged act of public lewdness occurs in the early evening on a subway platform in the City of New York.
The court reaches its conclusion that a subway platform is a “public place” for purposes of these cases despite Miguel R.’s observation that there are many “secluded areas” in the vicinity of train platforms, including stairways and assorted passages. While there is some authority for the view that secluded portions of certain locations sometimes may not qualify as “public places” within the meaning of the McNamara rule (see, e.g., United States v Doe, 884 F Supp 78 [ED NY 1995]), the accusatory instruments in these cases specifically allege that the defendants’ conduct occurred on the subway “platform,” not in a portion of a station that would be hidden from casual observation. The McNamara case (supra) does not require the People to provide “a virtual blueprint of the area involved in order to withstand a motion to dismiss.” (People v Davis, supra, at 93.) Because the risk of casual observation has been sufficiently alleged here, the accusatory instruments adequately establish that the defendants’ conduct occurred in a “public place.” *629 Hence, the motions to dismiss for facial insufficiency denied. are
[Portions of opinion omitted for purposes of publication.]

. The accusatory instrument against Frank S. must contain similar allegations with respect to the charge of exposure of a person, which is a violation. (See, Penal Law § 245.01 [“A person is guilty of exposure if he appears in a public place in such a manner that the private or intimate parts of his body are unclothed or exposed”].)

. Defendant Miguel R also argues that the complaint against him must be dismissed because the People have not alleged that he exposed any “private or intimate parts of his body in a lewd manner.” (See, Penal Law § 245.00.) The court rejects that position. The statute does not necessarily *625 require that a defendant expose any part of his or her body to commit the offense; a “lewd act” also qualifies. And, in any event, the facts alleged in the complaint supply ample basis to conclude that Miguel R can be held criminally responsible for aiding and abetting Frank S.’s alleged offense. (See, Penal Law § 20.00 [a person is criminally liable for the offense of another “when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct”].)

. During a calendar call on December 15, 1999, the People represented that there were between 15 and 20 people on the platform at the time of the alleged offense by these two defendants. Inasmuch as the People have not superseded the information to include that allegation, the court will not consider it here.