■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR PEREZ, Appellant. [715 NYS2d 398] —Judgment, Supreme Court, New York County (Michael Obus, J.), rendered February 3, 1999, convicting defendant, after a jury trial, of four counts of criminal sale of a controlled substance in the first degree (a class A-I felony) and four counts of criminal sale of a controlled substance in or near school grounds (a class B felony), and sentencing him to four terms of 16 years to life and four terms of 5 to 15 years, respectively, all to run concurrently, affirmed.

Defendant contends, for the first time on appeal, that each of his four convictions of selling drugs in or near school grounds must be reversed, inasmuch as the People assertedly failed to prove that any of those transactions occurred on "school grounds," as defined in the Penal Law.

The drug transactions that took place on September 11 and September 18, 1997, were negotiated on a stoop and in a public lobby of buildings well within the 1000-foot radius that defines "school grounds" (Penal Law § 220.00 [14]), for purposes of proving a sale "in or near" such grounds (see, Penal Law § 220.44 [5]). With regard to the transactions of September 23 and October 3, which were initiated in a building within that radius but consummated in the privacy of a second-floor apartment, defendant's challenge to the location as an element of the crime was never presented to the trial court, and thus the point has not been preserved for appellate review (People v Permant, 268 AD2d 230, lv denied 94 NY2d 905). We see no reason to exercise our discretion in reaching this issue "in the interest of justice" (CPL 470.15 [3] [c]).

We have considered the remaining point raised by defendant on this appeal, and find it to be without merit. Concur—Mazzarelli, J. P., Ellerin, Wallach and Rubin, JJ.

Saxe, J., concurs in a memorandum as follows: Defendant cannot prevail on his challenge to his convictions for drug sales near school grounds. The People satisfied their burden of proving that each of the four drug sales at issue took place "upon school grounds" as that phrase is defined by the Penal Law.

Penal Law § 220.44 (2) makes it a crime to sell a controlled substance "upon school grounds." Penal Law § 220.00 (14), in pertinent part, defines "school grounds" as: "any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school * * *. For the purposes of this section an 'area accessible to the public' shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants."

On September 11, 1997, an undercover officer approached defendant and Jose Santana, who were sitting on the stoop of an apartment building located 139 feet from a school, and asked if they had any "cocinal," or cooked cocaine. They said no, but as the undercover officer turned to leave, defendant called him back, and Santana asked what he wanted. They discussed quantity and price, then Santana and the undercover officer went inside the building lobby. After further discussion between Santana and defendant, and some walks back and forth between two different buildings, Santana gave the

undercover officer a brown paper bag containing over two ounces of crack cocaine in exchange for $2,000.

On September 18, 1997, the undercover officer approached the same building, where defendant and Jose Toribio were standing on the stoop. The undercover officer asked where Santana was, and Toribio responded "what are you looking for?" Before the undercover officer could respond, someone from across the street directed Toribio and defendant to take the undercover officer inside the building. The drug sale was negotiated in the lobby, and completed inside a second-floor apartment.

We reject defendant's contention that a private stoop or lobby falls outside the definition of "area[s] accessible to the public." The Penal Law should be construed "according to the fair import of [its] terms to promote justice and effect the objects of the law" (Penal Law § 5.00). It is the clear intent and purpose of this statute to create "drug free corridors" around schools (*see, People v Gaines*, 167 Misc 2d 923). The literal interpretation argued by defendant, that a stoop or lobby is not an "area accessible to the public," would clearly frustrate the overall design of the Legislature and create an absurd result (*see, People v Davis*, 195 AD2d 1, 4, *lv denied* 83 NY2d 871). Certainly, a stoop is no less accessible to the public than the sidewalk adjoining it. Nor is a lobby distinguishable from a store or restaurant; unlike a private apartment or residence, an unlocked, unguarded building lobby, like a restaurant or store, may be entered by any member of the public, including a school child.

During the transactions that occurred on September 23 and October 3, 1997, when the undercover officer approached either defendant or another member of the drug selling operation, the undercover officer was instructed to proceed to the second-floor apartment, where the drug sale was then consummated. Although the portion of the transaction that occurred in the area accessible to the public was non-verbal, because the undercover officer was recognized from earlier sales, the drug sale transaction clearly began outside.

"Of necessity, the law has long recognized the efficacy of non-verbal communications. From the formation of contracts by an offeree's silence, nod, hand signal or 'x' on an order blank to the doctrine of admission by silence, the law has legally realized that to offer guidance and comment meaningfully on the full range of human conduct, cognizance must be taken of communications other than by words." (*Aetna Cas. & Sur. Co. v Berry*, 350 F2d 49, 54; *see also*, Restatement [Second] of

Contracts § 19.) Just as a contract may be formed with non-verbal signals such as a wave or a nod, the initial stages of a drug sale transaction may occur non-verbally. Here, the undercover officer, simply by purposefully approaching and making eye contact with defendant and his colleagues, could be found to be making an initial, non-verbal inquiry as to whether they had drugs available for purchase. It is apparent that the implicit inquiry was understood as such by defendant, since by instructing the officer to go to an apartment upstairs, the seller was responding to the inquiry, indicating the availability of the drugs for sale.

The testimony was, therefore, sufficient in any event to support each of the convictions under Penal Law § 220.44 (2).