OPINION OF THE COURT
Shari R. Michels, J.
Defendant is charged with resisting arrest (Penal Law § 205.30); obstructing governmental administration in the second degree (Penal Law § 195.05); and attempted assault in *528 the third degree (Penal Law §§ 110.00, 120.00 [1]). Defendant moves to dismiss all charges as facially insufficient. For the reasons stated below, defendant’s motion is granted.
Facts
The criminal court information alleges, in pertinent part, that on November 18, 2012, at approximately 1:20 a.m., inside 894 Rogers Place, in the County of the Bronx, State of New York, the deponent, a police officer, observed defendant inside an elevator holding an open, half-full bottle of Ciroc Vodka. When the officer attempted to issue a summons to defendant for drinking in public, defendant placed his hands on the officer’s shoulders and pushed the officer off of him. When the officer attempted to arrest defendant, he flailed his arms, arched his back, and refused to be handcuffed.
The Parties’ Contentions
Defendant argues that the factual allegations in the information are insufficient to establish that his arrest was “authorized” or that the police were performing an “official function,” elements of resisting arrest and obstructing governmental administration in the second degree, respectively. Defendant asserts he was improperly stopped inside the elevator of an apartment building for violating the open container in a public place statute (Administrative Code of City of NY § 10-125 [b]). Defendant maintains that the interior, common areas of an apartment building do not constitute a “public place” as that term is defined within that statute; thus, the police were not authorized to issue him a summons for public consumption of alcohol. The People counter that the police properly stopped defendant in order to issue him a summons for an open container violation. The People contend that the elevator of an apartment building is a “public place” within the meaning of the open-container statute.
Analysis
In order to be sufficient on its face, an information must contain factual allegations of an evidentiary nature demonstrating reasonable cause to believe that the defendant committed the offense charged (CPL 100.15 [3]; 100.40 [1] [b]). Mere conclusory allegations are insufficient (People v Dumas, 68 NY2d 729, 731 [1986]). The facts must be supported by nonhearsay allegations which establish, if true, every element of the charged *529 offense and the defendant’s commission of the offense (CPL 100.15 [3]; 100.40 [1] [c]; People v Konieczny, 2 NY3d 569 [2004]; People v Alejandro, 70 NY2d 133 [1987]).
Resisting Arrest
Pursuant to Penal Law § 205.30, “[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person.” In order to be facially sufficient, the information must contain factual allegations, which, if assumed to be true, establish that defendant’s arrest by the officer was “authorized” (People v Alejandro, 70 NY2d 133 [1987]). In this case, the information sets forth, as the underlying basis for defendant’s arrest, his consumption of alcohol in a “public place,” in violation of Administrative Code § 10-125 (b).
Administrative Code § 10-125 (b), “Consumption of alcohol on streets prohibited,” reads: “No person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place except at a block party, feast or similar function for which a permit has been obtained.”
Administrative Code § 10-125 (a) (2), which defines the term “public place” for use in Administrative Code § 10-125 (b), states that a “public place” is
“[a] place to which the public or a substantial group of persons has access including, but not limited to, any highway, street, road, sidewalk, parking area, shopping area, place of amusement, playground, park or beach located within the city except that the definition of a public place shall not include those premises duly licensed for the sale and consumption of alcoholic beverages on the premises or within their own private property. Such public place shall also include the interior of any stationary motor vehicle which is on any highway, street, road, parking area, shopping area, playground, park or beach located within the city.”
In order for defendant’s possession of an open bottle of alcohol to justify an arrest under the statute, an apartment building elevator must constitute a “public place” within the meaning of that statute. For the reasons which follow, this court concludes that the common areas inside a residential apartment building, including its elevators, do not constitute “public places” as defined by the statute.
*530 “[T]he primary consideration of the courts [in the construction of statutes] is to ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a] at 177). In drafting the statute criminalizing the consumption of alcoholic beverages on the streets, the New York City Council defined “public place” in a restrictive manner which differs significantly from the definition of that term in other New York City Administrative Code provisions. The legislative intent may be properly inferred from the title of the offense itself, “Consumption of alcohol on streets prohibited” (emphasis added), a clear prohibition on the consumption of alcoholic beverages on the public streets and similar locations traditionally considered the functional equivalent of public streets, such as highways, playgrounds, sidewalks, beaches, and amusement parks. There is simply no basis to conclude that the interior common areas of residential apartment buildings, often separated from the streets by locked doors, intercoms, and “no trespassing” signs, are part of the public streets, whether the interior area is a rooftop garden, gymnasium, laundry room, hallway, lobby or elevator.
In clear contrast, multiple provisions of the Administrative Code contain more expansive definitions of a “public place” which expressly include the common areas inside apartment buildings. For example, Administrative Code § 10-136 (a) (3), which prohibits certain forms of aggressive solicitation, Administrative Code § 10-134.2 (a) (3), which regulates possession of laser pointers, and Administrative Code § 10-134.1 (b) (3), which prohibits the possession of box cutters by persons under 21 years of age, all expressly define the term “public place” to include “any hallway, lobby and other portion of an apartment house or hotel not constituting a room or apartment designed for actual residence” (emphasis added). Additionally, the definition of a “public place” within which smoking is prohibited pursuant to Administrative Code § 17-503 (a) includes “areas in a private residence which constitute common areas of a multiple dwelling containing ten or more dwelling units” (Administrative Code § 17-502 [p] [emphasis added]). Article 240 of the Penal Law, encompassing offenses against the public order, such as disorderly conduct and loitering offenses, also contains a broad definition of a “public place.” Penal Law § 240.00 states:
“The following definitions are applicable to this article:
*531 “1. ‘Public place’ means a place to which the public or a substantial group of persons has access, and includes, but is not limited to, highways, transportation facilities, schools, places of amusement, parks, playgrounds, and hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence” (emphasis added).
Thus, unlike the narrower prohibition on consumption of alcohol on the streets, these other statutes specifically include the common areas inside apartment buildings in their definitions of a “public place.”
The Court of Appeals has provided guidance for construing the statutory phrase “public place.” In People v Jackson (18 NY3d 738 [2012]), the Court observed that when a legislature drafts criminal statutes regulating conduct in “public places,” it takes one of three courses of action. A legislature either: (1) assigns a specific meaning to “public places” unique to the offense;[1] (2) leaves the phrase “public place” undefined; or (3) incorporates a definition of “public place” by referring to a preexisting definition of the term within another statute (id. at 742-743). With regard to Penal Law § 221.10 (1), the marihuana crime at issue in Jackson, the statute expressly incorporates by reference the definition of “public place” from Penal Law § 240.00 (l).[2] Therefore, the Jackson Court used the Penal Law article 240 definition of a “public place” to determine whether the defendant’s possession of marihuana inside his vehicle violated the statute.[3]
“For the purposes of this section, ‘public place’ means any street, sidewalk, bridge, alley or alleyway, plaza, park, driveway, parking lot or transportation facility or the doorways and entrance ways to any building which fronts on any of the aforesaid places, or a motor vehicle in or on any such place.”
*532 Prior to Jackson, in People v McNamara (78 NY2d 626 [1991]), the Court of Appeals analyzed the phrase, “a public place,” when not otherwise defined in a particular statute. In analyzing the public lewdness statute, Penal Law § 245.00,* **[4] McNamara declined to apply the definition of “public place” which appears at Penal Law § 240.00 (1), pointing out that the definition is expressly limited to article 240 offenses. Thus, Penal Law § 240.00 (1) applies to offenses against public order, but not to offenses against public sensibilities which appear in article 245 (id. at 630). The McNamara Court concluded that, by failing to include, by reference, the definition of a “public place” which appears in article 240, the legislature expressed an intent not to make the same broad definition applicable to article 245 offenses (id. at 633). Instead, McNamara concluded that the interior of a car parked on a public street could be “a public place” but only “where the objective circumstances establish that lewd acts committed there can, and likely would, be seen by the casual passerby” (id. at 633-634). Accordingly, the Court affirmed the dismissal since the sworn allegations failed to establish such objective circumstances.
In the instant statute, the City Council did not leave the term “public place” undefined, nor did it incorporate by reference a definition from another statute. Thus, there can be no question that the definition of a “public place” which appears at Penal Law § 240.00 does not apply to Administrative Code § 10-125 (b). Instead, the City Council, when drafting Administrative Code § 10-125, assigned its own specific meaning to a “public place.” That definition, unlike the definitions appearing at Penal Law § 240.00 (1) (offenses against public order), Administrative Code § 10-136 (a) (3) (aggressive solicitation), Administrative Code § 10-134.2 (a) (3) (laser pointers), Administrative Code § 10-134.1 (b) (3) (boxcutters), or Administrative Code § 17-502 (p) (smoking prohibition), does not include the common areas of apartment buildings.
This court rejects the People’s argument that the definition of a “public place” found in other Administrative Code offenses should be incorporated into Administrative Code § 10-125 (see People v Medina, 16 Misc 3d 382 [Sup Ct, Bronx County 2007]). The People look to the definitions of a “public place” appearing *533 in Administrative Code § 10-136 (a) (3) (aggressive solicitation), Administrative Code § 10-134.2 (a) (3) (laser pointers), and Administrative Code § 10-134.1 (b) (3) (possession of boxcutters), as well as the broad nature of the opening phrase of Administrative Code § 10-125 (a) (2), “[a] place to which the public or a substantial group of persons has access including, but not limited to,” in asserting that the common areas of apartment buildings come within the open container statute. However, as previously noted, this court finds that the City Council’s use of a narrow definition of the term “public place” in Administrative Code § 10-125 (a) (2) demonstrates a legislative intent to exclude from its scope areas inside residential properties. To apply the catchall provision, a “place to which the public or a substantial group of persons has access including, but not limited to,” as a means to incorporate the common areas inside an apartment building into Administrative Code § 10-125 (a) (2), would fail to give expression to the City Council’s intent, as evidenced by the unique definition of a “public place” adopted for this offense.
Moreover, the People’s expansive reading of the statute to encompass common areas of apartment buildings would create questions of proper notice to residents with respect to prohibited conduct. It has long been recognized that
“[s]tatutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. ‘Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid.’ ” (People v Grogan, 260 NY 138, 145 [1932] [citations omitted].)
To be sure, the law must provide residents with definite and comprehensive notice as to which acts are prohibited and which acts are lawful. This notice is especially important with regard to regulations on conduct within the common areas of apartment buildings, as these same areas have historically been considered both public and nonpublic, depending on the nature of the specific statutory prohibition. For example, for purposes of trespassing and burglary statutes, the common areas inside apartment buildings are not public places when efforts are made to exclude the general public (see People v Rodriguez, 159 AD2d *534 201 [1st Dept 1990], lv denied 76 NY2d 742 [1990] [stairwell of housing project building not open to the public for purposes of trespass statute]; People v Torres, 162 AD2d 385 [1st Dept 1990], lv denied 76 NY2d 897 [1990] [hallway of six-story apartment building with locked front door, intercom system, and “no trespassing” sign, not a “public place” for purposes of burglary prosecution]). Thus, in the absence of an express inclusion of these common areas in Administrative Code § 10-125 (a) (2), persons drinking alcohol in these areas may not be charged with consumption of alcohol on the streets.
In conclusion, the court finds the information fails to contain the necessary factual allegations to satisfy the element of the crime that the elevator was a “public place” and therefore, that defendant resisted an “authorized arrest.” Because the police were not authorized to arrest defendant for consumption of alcohol on the streets, pursuant to Administrative Code § 10-125 (b), when they observed him with an open bottle of alcohol in the elevator of an apartment building, the information fails to establish all of the necessary elements of the offense. Accordingly, the charge of resisting arrest is facially insufficient and is dismissed.
Obstructing Governmental Administration
A person is guilty of obstructing governmental administration in the second degree (Penal Law § 195.05) when “he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.”
One element of the crime is that a defendant prevents, or attempts to prevent, a police officer from performing an “official function.” Where, as here, the People allege that defendant attempted to interfere with an arrest, the lawfulness of the arrest must be demonstrated. Because the issuance of a summons for the consumption of alcohol was not authorized, in that the elevator where defendant was observed with an open container of alcohol was not a “public place” under Administrative Code § 10-125 (a) (2) (see discussion, supra), the officer was not performing an official function when he attempted to issue the summons (People v Greene, 221 AD2d 559 [2d Dept 1995] [defendant not guilty of resisting or obstructing unless police engaged in “authorized” conduct]; People v Milhouse, 246 AD2d *535 119 [1st Dept 1998]; Matter of Verna C., 143 AD2d 94 [2d Dept 1988]; Matter of Anthony B., 201 AD2d 725 [2d Dept 1994]; People v Lupinacci, 191 AD2d 589 [2d Dept 1993]; see also Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Penal Law § 195.05 [“official function” in the context of an arrest requires that the arrest be lawful]).
Accordingly, the charge of obstructing governmental administration in the second degree is facially insufficient and is dismissed.
Attempted Assault in the Third Degree
Defendant further moves to dismiss the charge of attempted assault in the third degree for facial insufficiency. Pursuant to Penal Law § 120.00 (1), a person is guilty of assault in the third degree when “[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person.” Physical injury is defined as “impairment of physical condition or substantial pain.” (Penal Law § 10.00 [9].) “[P]etty slaps, shoves, kicks and the like,” in and of themselves, do not rise to the level of “physical injury” (Matter of Philip A., 49 NY2d 198, 200 [1980]).
A person attempts to commit a crime when “with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” (Penal Law § 110.00.) Conduct which “tends to effect” the commission of a crime means conduct which comes dangerously close or very near to the completion of the intended crime.
To be facially sufficient, the factual allegations in the information, and the reasonable inferences which flow therefrom, must demonstrate reasonable cause to believe that defendant intended to cause physical impairment or substantial pain to the complainant, and that he engaged in conduct which came dangerously close to causing such physical injury. In this case, the information alleges that “defendant Chavez placed his hands on [the officer’s] shoulders and pushed [the officer] off of him.” Defendant’s act of pushing the arresting officer away from him, without more, does not demonstrate an intent to injure, nor does it show defendant’s actions came dangerously close to commission of a completed assault. (See Matter of Wanji W., 277 AD2d 243 [2d Dept 2000].) Accordingly, the charge of attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), is facially insufficient and is dismissed.
*536 Conclusion
The three counts of the accusatory instrument are facially insufficient. Defendant’s motion to dismiss the accusatory instrument, pursuant to CPL 170.30 (1) (a) and CPL 170.35 (1) (a), is granted in all respects.

. Jackson cites to “Loitering for the purpose of engaging in a prostitution offense” (Penal Law § 240.37) as an example of a crime with its own definition of a “public place.” Penal Law § 240.37 (1) states:

. Criminal possession of marihuana in the fifth degree (Penal Law § 221.10 [1]), states that
“[a] person is guilty of criminal possession of marihuana in the fifth degree when he knowingly and unlawfully possesses . . .
“marihuana in a public place, as defined in section 240.00 of this chapter, and such marihuana is burning or open to public view” (emphasis added).

. Matter of Calvin R., 291 AD2d 346, 347 (1st Dept 2002) (finding building lobby constituted a “public place” for Penal Law § 221.10 [1] offense, *532 noting that “the building lobby clearly constituted a ‘public place’ for purposes of Penal Law §240.00 [1]” [emphasis added]); see also People v Oquendo, 39 Misc 3d 70 (App Term, 1st Dept 2013).

. Penal Law § 245.00 reads, in relevant part: “A person is guilty of public lewdness when he intentionally exposes the private or intimate parts of his body in a lewd manner or commits any other lewd act. . . in a public place.”