OPINION OF THE COURT
 

 Levine, J.
 

 The 39-count indictment in this case arose out of an investigation by the Attorney-General of the investment promotional activities, commencing in 1982, of defendant First Meridian Planning Corp. (First Meridian), its officers and sales personnel. First Meridian portrayed itself to the investing public as
 
 *614
 
 a knowledgeable, experienced financial planning enterprise competent to advise clients on investment decisions through the formulation of a personalized investment plan tailored to the individual financial needs and objectives of each investor. In fact, however, First Meridian’s plans invariably were limited to three highly leveraged investment vehicles — numismatic coin portfolios, art portfolios and condominiums in Florida and Indiana — in which First Meridian or, in coin portfolio purchases, its codefendant coin dealers, would arrange for the financing of the borrowed portion of the investment acquisitions.
 

 Appellant Roger V. Sala was president and chief operating officer of First Meridian. Appellants Roger C. Sala and Meridian Arts (a First Meridian subsidiary) worked with First Meridian in promoting investments in the works of a group of local artists they had assembled. All of those appellants will be collectively referred to as the First Meridian defendants. Appellants Donald Kagin and Neil Berman were principals in four corporate coin dealerships who were codefendants in the indictment (hereinafter the coin dealer defendants).
 

 The first count of the indictment charged all but one of the defendants with the crime of scheme to defraud in the first degree (Penal Law § 190.65).
 
 *
 
 In addition, various defendants were charged with counts of fraud in the sale of securities (General Business Law § 352-c [6]), and grand larceny in the second or third degrees (in connection with sales of coins, artworks and condominiums to individual investors), failure to register as a commodity broker-dealer (General Business Law § 359-e [14] [k]) and failure to register as a commodity investment advisor
 
 (id..).
 

 Following defense motions to dismiss, County Court dismissed the first count of the indictment as duplicitous. The court also dismissed all of the remaining counts of the indictment against the coin dealer defendants. It held that the evidence before the Grand Jury was insufficient to show their criminal responsibility for the larcenies allegedly committed against individual investors. County Court further held, as a
 
 *615
 
 matter of law, that the sale of numismatic coins did not constitute the sale of securities and, therefore, it granted the motions by defendants Kagin, Berman and several other coin dealer defendants to dismiss the counts of fraud in the sale of securities. Finally, the Trial Judge dismissed all counts against the coin dealer defendants charging them with failure to register as a commodity broker-dealer.
 

 The Appellate Division reinstated count 1 of the indictment, concluding that it appropriately alleged and the Grand Jury could infer from the evidence, a single continuing scheme to defraud; thus, count 1 was not duplicitous (201 AD2d 145). The Appellate Division further held that there was sufficient evidence presented to the Grand Jury to support a prima facie finding that the sale of numismatic coin portfolios for investment purposes in this case constituted the sale of securities. Therefore, the Appellate Division reinstated the counts of fraud in the sale of securities against the coin dealer defendants. The Court also found the evidence sufficient to support a reasonable inference that the coin dealer defendants shared the larcenous intent of the First Meridian personnel and, hence, reinstated the larceny counts of the indictment against those defendants. As to two larceny counts, however, the Court found the proof of the value of the property taken insufficient to sustain charges higher than grand larceny in the fourth degree and modified those counts accordingly. Finally, the Appellate Division sustained County Court’s dismissal of counts 38 and 39 of the indictment charging defendants with failing to register as a commodity broker-dealer, and the Attorney-General has not sought to cross-appeal from that ruling.
 

 I
 

 We agree with the Appellate Division that count 1 of the indictment is not invalid for facial duplicity, that is, charging in a single count the commission of more than one offense
 
 (see,
 
 CPL 200.30 [1]). Duplicitous indictments are disallowed because of the danger that a jury may vote to convict on a count without having reached a unanimous verdict on the charges pleaded therein, and because it may undermine a subsequent double jeopardy defense
 
 (see, People v Keindl,
 
 68 NY2d 410, 418).
 

 Where, however, a crime by its nature as defined in the Penal Law may be committed either by one act or by multiple
 
 *616
 
 acts and can be characterized as a continuing offense over time, the indictment may charge the continuing offense in a single count
 
 (see, id., at 421; see also, People v Shack,
 
 86 NY2d 529, 540 [decided today];
 
 People v Sanchez,
 
 84 NY2d 440, 448). Undoubtedly, the crime charged in count 1 of the indictment, scheme to defraud in the first degree, can by its very nature be committed by multiple acts and permits, if not requires, characterization as a continuing offense committed over time. Thus, a person is guilty of a scheme to defraud when "he [or she] * * * engages in a scheme
 
 constituting a systematic ongoing course of conduct
 
 with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons” (Penal Law § 190.65 [1] [a] [emphasis supplied]). Accordingly, count 1 of the indictment is not facially duplicitous. To avoid the danger that defendants may be convicted on count 1 with less than a unanimous verdict, the trial jury in this case should be instructed that they must all agree upon the existence of the same single scheme to defraud and must also be unanimous as to each defendant found guilty that he or she participated in that same over-all fraudulent scheme alleged in the indictment
 
 (see, United States v Mastelotto,
 
 717 F2d 1238, 1247).
 

 We likewise reject appellants’ alternative contention that count 1 is fatally duplicitous because the evidence before the Grand Jury would not support the existence of a single scheme to defraud but, at most, the existence of disparate, multiple schemes to defraud involving unrelated participants (i.e., separate conspiracies to fraudulently induce investments in coins, artworks and condominiums, respectively). As the Appellate Division correctly recognized, the Legislature in amending the Penal Law to add crimes based on a scheme to defraud (Penal Law §§ 190.60, 190.65; L 1976, ch 384), modeled the offenses upon the Federal mail fraud statute
 
 (see,
 
 Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, at 423). Therefore, we may look to Federal precedents applying similar statutory language which hold that, despite the presence of some diversity of criminal actors, modalities and victims, the evidence may yet support the existence of a single, unitary over-all scheme to defraud.
 

 Thus, in
 
 United States v Morse
 
 (785 F2d 771 [9th Cir]), the court was presented with parallel facts to the instant case— the bilking of investors through the promotion of several different investment vehicles as income-producing tax shelters,
 
 *617
 
 in which the codefendants played differing roles with respect to different victims and investment programs at different times. The court nonetheless ruled that such factors did not negate the existence of a single scheme
 
 (see, id.,
 
 at 774). In
 
 Owens v United States
 
 (221 F2d 351 [5th Cir]), the court similarly held that "the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme”
 
 (id.,
 
 at 354). That court found that "the necessary unity deriv[ed] from the fact that the technique planned and used in each transaction is of the same general type”
 
 (id.,
 
 at 355). An additional factor the court in
 
 Owens
 
 relied upon as pointing to a unitary scheme was that a single corporation controlled by the defendants played some role in defrauding all of the victims
 
 (id.).
 
 The Second Circuit in
 
 United States v Crosby
 
 (294 F2d 928,
 
 cert denied sub nom. Meredith v United States,
 
 368 US 984) held a single conspiracy could be inferred from "[a] mail fraud scheme consisting of a large number of similar transactions, conducted by a constant nucleus with differing subordinates”
 
 (id.,
 
 at 945).
 

 Under the foregoing precedents, the evidence before the Grand Jury in the instant case was prima facie sufficient to permit the Grand Jury reasonably to infer the existence of a unitary scheme to defraud. First, the proof disclosed, and the indictment alleged, common techniques, misrepresentations and omissions of material facts employed in all transactions. These included: the invariable sales methodology used with all First Meridian potential clients of a series of home visits in which investors were led to believe that an individualized investment plan was to be prepared; misrepresentations that leveraged purchases of numismatic coin portfolios, artworks and condominiums were each low-risk, high-yield, highly liquid investments (the coin dealer defendants participated in these misrepresentations as to coin portfolio purchases); assurances as to all three investment vehicles that the value of the investments would be monitored by experts in the field; the furnishing of false updated appraisals; and the concealment of material fact that First Meridian and the coin dealer defendants would be superimposing substantial commissions paid to them as additional transactional costs upon acquisition of the asset, making it even more remote that investors would ever realize a profit upon eventual resale. These common aspects of all transactions, through which some 800 First Meridian clients were induced to part with more than $64 million, strongly support the existence of a unitary scheme to defraud.
 

 
 *618
 
 A second factor militating in favor of a single scheme to defraud was the pivotal role played by First Meridian in all of the transactions, as a "constant nucleus” through whom the contacts with all investors were initiated and maintained
 
 (see, United States v Crosby, supra; see also, United States v Zemek,
 
 634 F2d 1159, 1168,
 
 cert denied sub nom. Carbone v United States,
 
 450 US 916 [in finding a single fraudulent scheme, a court looks for "a rim sufficient to connect the various spokes of a single conspiratorial wheel”]). Thus, the claim of the coin dealer defendants of unawareness of and the absence of any participation in First Meridian promotions of investments in artworks and condominiums is unavailing to negate the existence of a single over-all scheme to defraud. "[W]hen a conspirator 'embarks upon a criminal venture of indefinite outline, he takes his chances as to its content and membership, so be it that they fall within the common purposes as he understands them’ ”
 
 (United States v Crosby,
 
 294 F2d, at 945,
 
 supra,
 
 quoting
 
 United States v Andolschek,
 
 142 F2d 503, 507).
 

 II
 

 The Appellate Division, in our view, also correctly concluded that, based upon the evidence concerning the conduct of the promotions, the nature of the offers made and the promised results, the Grand Jury could find that the sale of numismatic coin portfolios here constituted the sale of securities so as to support the validity of the counts of the indictment charging the First Meridian and coin dealer defendants with fraud in the sale of securities. Under the Martin Act (General Business Law, art 23-A, § 352
 
 et seq.)
 
 criminal liability may be imposed upon "[a]ny person * * * who intentionally
 
 engages
 
 in fraud * * * while engaged in inducing or promoting the * * * sale * * * within or from this state of any
 
 securities
 
 * * * as defined in this article” (General Business Law § 352-c [6] [emphasis supplied]). The Martin Act defines securities as "stocks, bonds, notes, evidences of interest or indebtedness or
 
 other securities”
 
 (General Business Law § 352 [1] [emphasis supplied]). In
 
 All Seasons Resorts v Abrams
 
 (68 NY2d 81), we expressly adopted as one set of criteria for "other securities” under the Martin Act the tripartite test enunciated in
 
 Securities & Exch. Commn. v Howey Co.
 
 (328 US 293) to determine whether a given property interest constituted a "security” when offered or sold. In
 
 Howey,
 
 the Supreme Court broadly equated securities under the Federal
 
 *619
 
 securities laws with investment contracts, holding that "an investment contract * * * means a contract, transaction, or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party”
 
 (id.,
 
 at 298-299). In
 
 People v Landes
 
 (84 NY2d 655), this Court also expressly held that, in criminal prosecutions under the Martin Act, investment contracts are "other securities”
 
 (id.,
 
 at 660, n 1).
 

 The primary argument of the First Meridian defendants and defendants Kagin and Berman is that the sale of numismatic coins cannot be the sale of a security because the phrase "other securities” takes its meaning from the specific types of securities set forth in General Business Law § 352 (1), that is, "stocks, bonds, notes, evidences of interest or indebtedness”. They claim that "other securities” must therefore refer to some
 
 document,
 
 akin to a bond, note, etc., evidencing an interest in tangible or intangible property, and cannot refer to the property or commodity itself, in this case numismatic coins. We disagree. In
 
 Securities & Exch. Commn. v Howey (supra),
 
 the Supreme Court in articulating its three-fold functional test for an investment contract/security, specifically eschewed requiring the existence of some "paper” formally evidencing the interest offered or sold, "it being immaterial whether the shares in the enterprise
 
 are evidenced by formal certificates or by nominal interests
 
 in the physical asset employed in the enterprise” (328 US, at 299 [emphasis supplied]). In
 
 Securities & Exch. Commn. v Joiner Corp.
 
 (320 US 344), the Court rejected the same
 
 ejusdem generis
 
 argument appellants make here in their attempt to restrict the meaning of "other securities”
 
 (id.,
 
 at 349;
 
 see also, id.,
 
 at 351, n 8). The Court in
 
 Joiner
 
 also rejected a strict construction narrowly limiting the meaning of "security”, even in criminal prosecutions under the Federal securities laws
 
 (see, id.,
 
 at 354-355) and held that these canons of construction will not be followed when their application would conflict with the general remedial purposes of the securities laws.
 

 The Federal courts have repeatedly applied the teachings of
 
 Howey
 
 and
 
 Joiner
 
 to find that arrangements for the purchase of various tangible properties or commodities, under circumstances paralleling the sale of coin portfolios here, constituted the sale of securities
 
 (see, Miller v Central Chinchilla Group,
 
 494 F2d 414 [chinchillas];
 
 Glen-Arden Commodities v Costantino,
 
 493 F2d 1027 [casks of scotch whiskey];
 
 Kemmerer v Weaver,
 
 445 F2d 76 [beavers];
 
 Jenson v Continental Fin. Corp.,
 
 
 *620
 
 404 F Supp 792 [gold and silver coins];
 
 Securities & Exch. Commn. v Brigadoon Scotch Distribs.,
 
 388 F Supp 1288 [rare coin portfolios]).
 

 Moreover, in
 
 People v Landes
 
 (84 NY2d, at 660, n 1,
 
 supra),
 
 we upheld a conviction under the Martin Act despite defendant’s contention that his failure to issue certificates evidencing the promised corporate stock precluded criminal liability based upon a sale of securities. Thus, to require in all Martin Act prosecutions that a fraudulently induced investment contract result in the issuance of some formal instrument evidencing the interest in the property sold would be inconsistent with the functional approach of the
 
 Howey
 
 case and would permit manipulation of investment transactions so as to thwart the protective and remedial purposes of the Act.
 

 The evidence here was sufficient to meet the three elements of the
 
 Howey
 
 test. Uncontestably, the First Meridian clients were induced to purchase numismatic coin portfolios for the purpose and in the expectation of making a profit from ultimate resale, an
 
 investment of money
 
 satisfying the first prong of
 
 Howey.
 
 That investment was in a
 
 common enterprise,
 
 as the second element of
 
 Howey
 
 has been construed by the courts. It is not required that the investor acquires a share in a common fund. Rather, the common enterprise factor can be established by proof that "the fortunes of all investors are inextricably tied to the efficacy [of those seeking the investment or a third party]”
 
 (Securities & Exch. Commn. v Koscot Interplanetary,
 
 497 F2d 473, 479;
 
 see, Securities & Exch. Commn. v Turner Enters.,
 
 474 F2d 476, 482, n 7,
 
 cert denied
 
 414 US 821;
 
 see also, Glen-Arden Commodities v Costantino,
 
 493 F2d, at 1035,
 
 supra).
 
 We note in this regard that in the
 
 Howey
 
 case itself, the Court found that the common enterprise factor was established although investors purchased individual orange grove lots, rather than an interest in an undivided entire grove
 
 (see, Securities & Exch. Commn. v Howey Co.,
 
 328 US, at 295,
 
 supra).
 

 There was also evidence in the record before the Grand Jury to establish the final factor in the
 
 Howey
 
 definition of security, that the profits are expected to be derived "solely from the efforts of the promoter or a third party”
 
 (id.,
 
 at 299,
 
 supra).
 
 In applying this element of the Howey test, the courts have not construed it literally, but realistically. It is sufficient if the promoter’s (or third person’s) efforts are "the undeniably significant ones, those essential managerial efforts, which
 
 *621
 
 affect the failure or success of the enterprise”
 
 (Securities & Exch. Commn. v Turner Enters.,
 
 474 F2d, at 482,
 
 supra).
 
 The representations made personally by First Meridian sales personnel and by the coin dealer defendants in their sales literature assured investors that a critically important guarantee of the profitability of the numismatic coin portfolio investments was the expertise of the dealers in selecting the coins to be purchased, monitoring their value in a fluctuating market, aiding in making resale decisions and providing assistance with resales. Thus, the evidence easily suffices to prima facie satisfy the third prong of a Howey test.
 

 To conclude on this issue, a prima facie case was established before the Grand Jury that the sales of numismatic coins by the coin dealer defendants, through First Meridian, constituted the sales of securities, thus supporting the validity of the counts of the indictment charging fraud in the sale of securities. The counter argument of defendants Kagin, Berman and First Meridian, that they merely sold a commodity, the tangible coin portfolio itself, is unpersuasive. The sales pitch used to induce these purchases offered a package which included not only the tangible coins but a spectrum of supposedly profit-enhancing services, all part of an investment plan. The Second Circuit’s rejection of a similar claim in
 
 Glen-Arden Commodities v Costantino (supra)
 
 is especially apt here: "it ill behooves appellants, after enticing their customers with fancy brochures, touting their investment plan, now to claim that there was no investment plan but the mere sale of an unadorned commodity” (493 F2d, at 1034-1035,
 
 supra).
 
 At the trial, of course, the People will have the burden of establishing beyond a reasonable doubt under jury instructions based on the criteria herein discussed, that defendants’ sales of coin portfolios constituted the sales of securities
 
 (Securities & Exch. Commn. v Joiner Corp.,
 
 320 US 344, 355,
 
 supra; United States v Morse,
 
 785 F2d, at 775-776,
 
 supra; Roe v United States,
 
 287 F2d 435, 440,
 
 cert denied
 
 368 US 824).
 

 We also reject defendant Kagin’s claim that, if General Business Law § 352-c (6) is so construed to include the sale of numismatic coins as a sale of securities for purposes of criminal prosecution, the statute is unconstitutionally vague. The "void for vagueness” doctrine requires that a penal statute "provide the ordinary citizen with adequate notice of the exact conduct prohibited”
 
 (People v Bright,
 
 71 NY2d 376, 384), while at the same time affording law enforcement officials some objective standard to avoid "the possibility that the law will
 
 *622
 
 be arbitrarily enforced”
 
 (id.).
 
 Of these dual purposes of the doctrine, the provision of minimal guidelines to discourage arbitrary or discriminatory enforcement is the more important objective
 
 (see, Kolender v Lawson,
 
 461 US 352, 358). The doctrine, however, recognizes that some forms of conduct which a State may validly make subject to penal sanctions cannot, and need not, be defined with precision
 
 (United States v Petrillo,
 
 332 US 1, 7-8). Of special significance here, the vagueness doctrine does not adjudge the language of a criminal statute in the abstract, but rather in the "animating context of well-defined usage * * * and * * * court construction which determines its meaning”
 
 (Beauharnais v Illinois,
 
 343 US 250, 253).
 

 As discussed above, well before defendants engaged in the conduct which is the subject of this indictment, the New York courts adopted the
 
 Howey
 
 test for determining whether the sale or offer to sell an interest in property constitutes the sale of a security. Moreover, as has been amply demonstrated, also well before defendants embarked on their investment promotion activities, an extensive body of precedent construing and applying the
 
 Howey
 
 definition of security had held that commodities and other forms of tangible personal property or even real property could constitute securities, if the circumstances of the offer or sale thereof met the three-pronged
 
 Howey
 
 test.
 

 Thus, judicial construction of "other securities” was amply sufficient to meet the requirements of the void for vagueness doctrine in enforcing the Martin Act by providing adequate notice to the public, and objective standards for law enforcement officials. The vagueness doctrine is "not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited”
 
 (Colten v Kentucky,
 
 407 US 104, 110).
 

 We have considered the remaining contentions of the First Meridian defendants and defendants Kagin and Berman, including their claims regarding the sufficiency of the evidence to establish complicity in the larceny counts of the indictment, and the adequacy of the Grand Jury instructions, and find them also unpersuasive.
 

 
 *623
 
 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order affirmed.
 

 *
 

 Defendant Donald Kagin, an officer of defendants Kagin’s Numismatic Investment Corp. and Kagin’s Numismatics Inc., was not charged under count 1 of the indictment. He, however, was named as a defendant in various counts charging fraud in the sale of securities in violation of General Business Law § 352-c (6) and grand larceny, third degree, in connection with the sale of numismatic coin portfolios to individual investors.