[705 NYS2d 592]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY L. REED, Also Known as "ANT LIVE," Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND EARL WARREN, JR., Also Known as "MR. T," Appellant.

Second Department, March 13, 2000

58

**APPEARANCES OF COUNSEL**

*Kevin P. Gilleece,* White Plains, for Anthony L. Reed, appellant.

*Bruce A. Petito,* Poughkeepsie, for Raymond Earl Warren, Jr., appellant.

*William V. Grady, District Attorney* of Dutchess County, Poughkeepsie (*Kristen A. Rappleyea* and *Bridget Rahilly Steller* of counsel; *Jessica Glickman* on the brief), for respondent.

**OPINION OF THE COURT**

S. MILLER, J.

The instant appeals mark the first time since the reinstatement of the death penalty (*see,* CPL 400.27, as added by L 1995, ch 1), that the constitutionality of the first degree murder statute (*see,* Penal Law § 125.27) has been challenged before this Court, following jury verdicts convicting for non-capital first degree murder. Indeed, these appeals raise several rather novel issues concerning the interpretation and constitutionality of the first degree murder statute. First, did the Legislature intend to permit first degree murder convictions to rest upon evidence of accessorial liability? Second, does accessorial liability provide a constitutionally permissible basis for a charge of first degree murder? Third, is the multiple killings provision of the first degree murder statute unconstitutionally vague because it applies to multiple homicides perpetrated in the "same criminal transaction" without providing a definition of that term?

We answer the first two questions in the affirmative, and the third in the negative. The Legislature did intend to allow first degree murder convictions to be predicated upon accessorial liability. Moreover, accessorial liability is permissible within the strictures of the Eighth Amendment under the cir-

cumstances of this case. Finally, the statute is not unconstitutionally vague; a reasonable person would clearly be on notice that multiple homicides within a short period of time are proscribed by the statute. Accordingly, we affirm the judgments of conviction.

## I

Because the issues presented by these appeals primarily raise questions of law, the following brief recitation of facts will suffice. As numerous eyewitnesses testified, the defendants Anthony L. Reed, also known as "Ant Live," and Raymond Earl Warren, Jr., also known as "Mr. T," were native Poughkeepsie drug dealers. In or about the summer of 1995, a group of drug dealers from New York City began moving in on the local dealers' turf. Two brothers, Clavin Mann and Kelly Mann, were among these interlopers. On November 18, 1995, after a series of increasingly violent encounters in what one witness characterized as a "drug war," and after expressing their desire to exact revenge against "some out-of-town New York[ers]," the defendants Warren and Reed gunned down the Mann brothers on South Cherry Street in Poughkeepsie. Witnesses said each defendant shot one Mann brother. Ballistics evidence confirmed that Clavin Mann was killed by a .45 caliber shot to the back and Kelly Mann by a .32 caliber shot to the head. Police recovered .45 and .32 caliber weapons which were traced back to the defendants. While it is not certain which defendant used which gun, each defendant's killing of one Mann brother was established beyond any reasonable doubt.

## II

The defendants were indicted on numerous charges including two counts each of first degree murder. These counts charged each defendant with perpetrating multiple killings in violation of Penal Law § 125.27 (1) (a) (viii) which states: "A person is guilty of murder in the first degree when: * * * [w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and * * * as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person or persons, causes the death of an additional person or persons; provided, however, the victim is not a participant in the criminal transaction." Notwithstanding these first degree murder charges, the Dutchess County District Attorney declined to file notices of intent to seek the death penalty. The cases were prosecuted as non-capital first degree murder cases.

Following separate jury trials, each defendant was convicted of two counts of murder in the first degree and two counts of criminal weapons possession in the second degree. Since these were non-capital cases, the court imposed concurrent sentences of life without parole on each defendant's convictions of murder in the first degree (*see,* CPL 400.27 [1]). These appeals ensued.

## III

At the outset it must be emphasized that the thrust of the defendants' constitutional challenges attack the "capital sentencing scheme" insofar as New York's first degree murder statute could produce a capital conviction predicated upon accomplice liability. However, the instant defendants were not sentenced to death; they were sentenced to life without parole. Thus, whatever merit might be inherent in the defendants' arguments had they been sentenced to death, they are purely theoretical. Indeed, while the defendants attempt to bootstrap their contentions upon the recognized body of case law providing heightened scrutiny to capital cases due to the irrevocability of a sentence of death, obviously a sentence of life without parole is not similarly irrevocable.

## IV

 The first issue to be considered requires a thorough analysis of the first degree murder statute (Penal Law § 125.27) to discern whether the Legislature intended to permit a conviction to rest upon evidence of accomplice liability. As part of the argument that the first degree murder statute is unconstitutionally vague, the defendants assert that the multiple killing provision under which they were convicted clearly contemplates one individual killer causing the death of two or more people during the same criminal transaction and not two individual killers acting in concert. Accordingly, the defendants contend that their convictions cannot stand since the Legislature did not intend to permit first degree murder charges to be predicated upon accessorial liability. The defendants are incorrect in their assertions.

The first degree murder statute was enacted to create the possibility of a sentence of death for only the most egregious of murders. The intentional killing of a human being remains a second degree offense, but the presence of one or more statutorily-enumerated aggravating factors provides the legal justification to elevate the charge to one of first degree murder (*see,* Donnino, Practice Commentary, McKinney's Cons Laws of

NY, Book 39, Penal Law § 125.27, at 381-396; CPL 400.27). Assuming that the prosecution requests the death penalty, a jury will decide, after a conviction, whether a sentence of death should be imposed (*see,* CPL 400.27).

The defendants contend that the aggravating factor of multiple killings was not intended to be met by evidence of accessorial liability. The defendants argue that because the language of the statute refers to only one actor (i.e., "[a] person," "*he* causes the death," and "*the* defendant" (Penal Law § 125.27 [emphasis supplied]), it was not the intent of the Legislature to extend this statute to cases of accessorial liability by multiple actors. The defendants are wrong.

At the outset, General Construction Law § 35 expressly states that "[w]ords in the singular number include the plural" (General Construction Law § 35; *see, People v Fernandez,* 173 Misc 2d 938, 946). "This rule of construction 'is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended' " (*People v Buckley,* 75 NY2d 843, 846, quoting General Construction Law § 110). As we will see *infra,* inasmuch as the Legislature clearly did not intend to preclude accessory liability in a first degree murder prosecution, the statutory references to single actors clearly may be construed as applying to multiple actors as well.

It is settled that a person may be convicted of murder in the second degree (Penal Law § 125.25) via accessorial liability upon proof of a shared intent to kill (*see, e.g., People v Ficarrota,* 91 NY2d 244; *People v Allah,* 71 NY2d 830; *People v Whatley,* 69 NY2d 784; *People v Brathwaite,* 63 NY2d 839; *People v Ortega,* 258 AD2d 335; *People v Woodbourne,* 237 AD2d 547; *People v Adams,* 185 AD2d 326; *People v Gonzalez,* 143 AD2d 681), and the second degree murder statute also makes express reference to "[a] person" and "he causes the death" and "the defendant." Clearly, statutory references to single actors do not preclude an interpretation applying the law to multiple actors.

The defendants argue that had the Legislature intended multiple killers to be convicted of first degree murder via accessorial liability, it would have expressly done so. To support this proposition the defendants note that the Legislature created special rules of accessorial liability in the first degree felony murder and contract killing provisions. The defendants posit that the Legislature could have also expressly created special rules for accessorial liability in the multiple killers pro-

vision. However, the defendants' arguments clearly miss the mark and run contrary to established canons of statutory construction.

A defendant can be convicted of second degree felony murder as an accessory for participating in a designated felony (*see,* Penal Law § 125.25 [3]) with the requisite intent to commit the underlying felony and the knowledge that death could result (*see, e.g., People v Howard,* 241 AD2d 920; *People v Lopez,* 218 AD2d 574; *People v Sims,* 209 AD2d 192). In sharp contrast, the Legislature expressly limited accessorial liability in first degree felony murder cases so that a non-shooter can be convicted of first degree felony murder only if, during the perpetration of a designated felony, the non-shooter expressly "commanded" the shooter to kill (Penal Law § 125.27 [1] [a] [vii]; *see, People v Couser,* 258 AD2d 74, *lv granted* 93 NY2d 1043). Contrary to the defendants' sophistic contentions, the fact that the Legislature created separate rules for first degree felony murder limiting accessorial liability gives rise to the inference that the Legislature did *not* intend to limit normal rules of accessorial liability in the multiple killings paragraph of the first degree murder statute. As Judge Donnino observes: "under the standard rules of criminal liability, the killer as well as a person who shares the intent to kill and otherwise participates as an accomplice [CPL 20.00] in the killing is equally guilty of the crime * * * Beyond requiring that the accomplice share the intent to kill, however, the Legislature decided that, *for this provision alone* [*i.e.*, first degree felony murder] only one of the multiple ways a person may participate as an accomplice [*see,* Penal Law § 20.00] will suffice for liability for murder in the first degree; namely, that the accomplice commanded the killing * * * It should be emphasized that to the extent consistent with the federal and state constitutions, *accomplice liability pursuant to Penal Law article 20 is not limited by statute for any other provision of murder in the first degree.*" (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 125.27, *id.,* at 390 [emphasis added].) This interpretation is consistent with the maxim of statutory interpretation *expressio unius est exclusio alterius,* that where the law expressly creates an exclusion applicable to certain situations, an irrefutable inference must be drawn that the statute was not intended to exclude other situations (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 240). This interpretation is also consistent with the related rule that the failure of the Legislature to include a matter

within the scope of an act is an indication that its exclusion was intended (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 74). Simply stated, the correct interpretation of the Legislature's express limitation on accessorial liability in first degree felony murder prosecutions and its failure to do so for multiple killings, is that the Legislature did not intend to alter ordinary rules of accomplice liability as applied to multiple killers.

The legislative Bill Jacket accompanying the enactment of the first degree murder statute contains no express discussion of accessorial liability for accomplice killers. However, in Governor Pataki's approval memorandum, he pointed out that a defendant's "extent of participation in the murder" is a mitigating factor that a jury can consider in the sentencing phase of the case (Governor's Mem approving L 1995, ch 1, 1995 NY Legis Ann, at 24). In furtherance thereof, the statutorily-mandated mitigating factors which a jury must consider include that "[t]he defendant was criminally liable for the present offense of murder *committed by another,* but his participation in the offense was relatively minor, although not so minor as to constitute a defense to prosecution" (CPL 400.27 [9] [d] [emphasis added]). This eliminates any doubt that the Legislature intended to permit first degree murder prosecutions to be brought against accessorially liable defendants, leaving their degree of participation for the determination of the sentencing jury. As such, the defendants' arguments that an accessory may not be convicted of first degree murder for multiple killings are clearly wrong.

## V

■ There is no constitutional impediment to predicating a charge of first degree murder upon accessorial liability. The defendants employ broad rhetoric and cite to *Furman v Georgia* (408 US 238) for the proposition that a State death penalty scheme must distinguish between cases warranting a sentence of death, and the majority of cases which are not capital prosecutions. While the defendants correctly recite abstract legal rules, their arguments are inapposite to the facts at bar.

In *Enmund v Florida* (458 US 782), the defendant was an accomplice of two other criminals who planned to rob an elderly husband and wife in their farmhouse. While the other perpetrators robbed and then executed the homeowners, the defendant waited in the getaway car. He was ultimately convicted of first degree murder and sentenced to death. The Supreme Court did

not disturb the finding of guilt. However, it held that because of the defendant's limited participation in the crime, a sentence of death was disproportionate to his offense and hence was violative of the Eighth Amendment's proscription against cruel and unusual punishment.

Five years later in *Tison v Arizona* (481 US 137), the Supreme Court revisited the issue of capital punishment for accessories to murder. In that case two defendant brothers, in conjunction with other relatives, planned to help their father escape from the prison where he was incarcerated for his killing of a guard during a prior escape attempt. The defendants entered the prison "carrying a large ice chest filled with guns" (*supra,* at 139), and after seizing control of the cellblock, managed to effectuate a bloodless jail break. However, two days later the group commandeered a car and captured its occupants. The defendants' father and another individual later executed the family of four whose car they had stolen. The defendants were subsequently arrested and charged with first degree capital murder for their participation in the acts leading to the executions.

That time, the Supreme Court, by a 5-4 vote, held that the defendants could be subjected to a capital prosecution for their accessorial conduct. The Court distinguished the comparatively minimal participation of the defendant in *Enmund v Florida (supra)* and concluded that in light of the Tison brothers' greater degree of participation, sentences of death were not disproportionate to the offenses.

The clear import of *Enmund (supra)* and *Tison (supra)* is that accessories who are major participants in intentional killings can be sentenced to death without running afoul of the Eighth Amendment (*see,* Crocker, *Concepts of Culpability and Deathworthiness: Differentiating Between Guilt and Punishment in Death Penalty Cases,* 66 Fordham L Rev 21, 45-47 [1997]; Friedman, *Tison v Arizona: The Death Penalty and the Non-Triggerman: The Scales of Justice are Broken,* 75 Cornell L Rev 123 [1989]). Application of that simple rule to the facts of the instant appeals leads to the conclusion that the defendants at bar do not have any winning constitutional objections. These defendants were clearly major participants, akin to the Tison brothers. Each was armed and each killed one rival drug dealer in a concerted effort to kill off two competitors. As such, these major accessorial/direct participants, consistent with the Eighth Amendment, could have been sentenced to death. The sentences of life without parole imposed herein cannot be said to violate the Eighth Amendment.

# VI

█ The defendants further challenge the constitutionality of the first degree murder statute alleging that insofar as it purports to punish multiple killings that are perpetrated as part of the "same criminal transaction," it is vague and overly broad. Specifically, the defendants boldly charge that without a definition of "same criminal transaction" in the statute, Penal Law § 125.27 (1) (a) (viii) fails to narrow the class of persons eligible for the death penalty, fails to limit prosecutorial decision making, fails to guide discretion of a jury, and undermines meaningful appellate review. Although the defendants try to bootstrap their vagueness arguments with sporadic, disconnected references to statutory overbreadth as a discrete constitutional infirmity, clearly the focus of the defendants' challenges is solely vagueness. The defendants' contentions are meritless.

It is true that the first degree murder statute does not contain a definition of "same criminal transaction." However, both the statutory and decisional law of this State are well acquainted with the concept of a "criminal transaction." For purposes of determining double jeopardy issues, CPL 40.10 (2) defines "[c]riminal transaction" as: "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture." This definition has been expressly incorporated by reference into numerous other statutes (see, CPL 200.20 [joinder of offenses]; CPL 200.40 [joinder of defendants]; Penal Law § 460.10 et seq. [Organized Crime Control Act]; ECL 71-4401 [illegal release of medical waste]; General Municipal Law § 371; Vehicle and Traffic Law § 1690 [adjudication of traffic infractions by municipal parking violations agencies]; CPLR 1310 [civil forfeitures]). Other statutes use the term "criminal transaction" without reference to the statutory definition supplied by CPL 40.10 (2) or any other definition (see, Penal Law § 60.27 [governing restitution for losses from criminal transactions]; Penal Law §§ 215.15, 215.16, 215.17 [defining the three degrees of intimidation of a witness or victim with reference to underlying criminal transaction]; Penal Law § 450.10 [4] [c] [concerning return of stolen vehicles not involved in other criminal transactions]). Furthermore, decisional law concerning the propriety of imposing consecu-

tive sentences frequently involves discussions of whether criminal conduct occurred in one or more than one criminal transaction (*see, e.g., People v Bryant,* 92 NY2d 216; *People v Miller,* 262 AD2d 796; *People v Watts,* 251 AD2d 687). Thus, "criminal transaction" is far from a nebulous, undefined term.

The defendants contend that the statutory definition of "criminal transaction" contained in CPL 40.10 (2) cannot be applied to the first degree murder statute to cure the fatal lack of a relevant definition therein. They fail to support their contentions with any authority, however, beyond pointing out that the definition in CPL 40.10 (2) is among those said to be "applicable to this article" (i.e., CPL art 40). Apparently because the definition is expressly applicable to double jeopardy situations, the defendants believe it is inapplicable to other cases. The defendants are incorrect.

It is a basic canon of statutory interpretation that "[w]ords of technical or special meaning are construed according to their technical sense, in the absence of anything to indicate a contrary legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 233). This rule is interpreted to mean that when a statute fails to define a given term, that term should "be given its 'precise and well settled legal meaning in the jurisprudence of the state'" (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166, 173 [defining "interstate commerce"]). Indeed, it is presumed that in drafting the statute, the Legislature understood and adopted that well-settled meaning (*see, People v Mateo,* 93 NY2d 327).\* Accordingly, insofar as CPL 40.10 (2) provides a well-settled meaning within the general jurisprudence of this State, there appears to be no reason why it cannot be borrowed for application in the first degree murder statute.

In *People v Harris* (177 Misc 2d 259), a first degree murder prosecution, the court applied the definition of criminal transaction provided by CPL 40.10 (2) in considering a multiplicity challenge in a case against a multiple murderer. The *Harris* court concluded that a definition pertinent to double jeopardy considerations was applicable, distinguishing *People v Fernan-*

---

\* One of the issues in controversy in *People v Mateo* (*supra,* at 330) concerned the interpretation of the undefined term "'committed in a similar fashion'" in the serial killer first degree murder provision. Interestingly, the County Court, Monroe County, held that this term was not unconstitutionally vague (*see, People v Mateo,* 175 Misc 2d 192), although this issue was not in controversy thereafter on the People's subsequent appeals (*see, People v Mateo,* 249 AD2d 894, *affd* 93 NY2d 327, *supra*).

*dez* (173 Misc 2d 938), where the court expressly declined to apply the definition of criminal transaction as set forth in CPL 40.10 (2) to the multiple killings provision of the first degree murder statute. In *People v Fernandez (supra)*, the court defined the term "criminal transaction" pursuant to its "ordinary meaning" as a process of carrying out a series of criminal activities from beginning to end, reasoning that "[w]hen a statute provides a definition, and expressly states that the definition is applicable to a specific article, the definition is inapplicable to other articles" (*People v Fernandez, supra,* at 946, n 2, citing *People v McNamara,* 78 NY2d 626, 630, and *People v Neumann,* 51 NY2d 658, 665). However, we do not agree with the conclusion of the court in *People v Fernandez (supra)* and neither *People v McNamara (supra)* nor *People v Neumann (supra)*, upon which the *Fernandez* court relied, stand for the proposition that definitions can never be borrowed from one criminal statute for application in another. Furthermore, neither case considered this issue in the context of a constitutional challenge to a statute on vagueness grounds. The Court of Appeals evidently determined that under the circumstances of those cases, definition borrowing was inappropriate. No case (other than *Fernandez*) has ever cited to *McNamara* or *Neumann* as authority for any blanket prohibition against borrowing a statutory definition for application in a prosecution under a different statute, and any such rule would appear to go against the authorities cited previously which permit the practice so that an undefined term should "be given its 'precise and well settled legal meaning in the jurisprudence of the state'" (*Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166, 173, *supra*).

Indeed, by employing the definition of "criminal transaction" set forth in CPL 40.10 (2), the very concerns presented by a vagueness challenge are avoided. When construed to include the definition of criminal transaction set forth in CPL 40.10 (2), the multiple killing provision of the first degree murder statute is clearly sufficiently definite to give an ordinary person fair notice of the proscribed conduct, i.e., multiple homicides closely related in time or criminal purpose, and it provides the requisite standards to avoid ad hoc, subjective determinations and arbitrary application (*see, People v Nelson,* 69 NY2d 302).

Moreover, it is axiomatic that defendants bear a heavy burden of rebutting the strong presumption of constitutionality afforded to statutory enactments, and they must prove the statute unconstitutional beyond a reasonable doubt (*see, People*

*v Tichenor,* 89 NY2d 769, *cert denied* 522 US 918; *People v Demperio,* 86 NY2d 549; *People v Davis,* 43 NY2d 17, *cert denied* 435 US 998). The mere fact that a criminal statute fails to define a key word or phrase does not render the statute automatically vague and violative of due process (*see, People v Wan Shing,* 83 Misc 2d 462). Rather, "[t]he constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed" (*United States v Harriss,* 347 US 612, 617; *see also, People v Klose,* 18 NY2d 141). Moreover, "a vagueness challenge must be addressed to the facts before the court" (*People v Nelson, supra,* at 308, citing *United States v Mazurie,* 419 US 544, 550). "[I]f the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise" (*United States v Harriss, supra,* at 618).

Application of the foregoing rules clearly undermines any legitimacy in the defendants' vagueness challenges. The facts of these cases present multiple and nearly simultaneous shootings by the two defendants, clearly acting in concert to kill two rival drug dealers. Under these facts, there is no genuine vagueness problem, since Penal Law § 125.27 (1) (a) (viii) unambiguously proscribes multiple killings, which is "specific conduct easily avoided by the innocent-minded. It should present no difficulty for a citizen [or citizens] to comprehend that he [or they] must refrain from [multiple killings]" (*People v Nelson, supra,* at 307). Accordingly, the defendants' vagueness arguments are without merit.

## VII

In sum, it is clear that the defendants' challenges to the constitutionality of the multiple killings provisions of the first degree murder statute are specious. Moreover, the other issues raised by the defendants do not require reversal. Accordingly, the judgments are affirmed.

RITTER, J. P., FLORIO and H. MILLER, JJ., concur.

Ordered that the judgments are affirmed.