OPINION OF THE COURT
Steven W. Fisher, J.
This is a motion by defendant John Taylor (1) for an order dismissing all but one of the first 20 counts of indictment No. 1845/2000 on the ground that those counts are multiplicitous, or, in the alternative, dismissing all 20 counts as unconstitutionally vague and overbroad; (2) for an order dismissing the 21st count of the indictment on the ground that it is unconstitutionally vague and overbroad with respect to the element of *126 “robbery”; (3) for an order dismissing the 21st count of the indictment, as well as counts 30 through 34, on the ground that they are unconstitutionally vague and overbroad with respect to the element of “in the course of and in furtherance of’; and (4) an order dismissing the 21st count of the indictment on the ground that the statute on which it is based is irrationally underinclusive.
The indictment charges the defendant with murder in the first degree and lesser crimes in connection with a robbery and shooting that left five persons dead and two injured inside a Wendy’s restaurant in Flushing, Queens.
I
Each of the first 20 counts of the indictment charges the defendant with first degree murder committed in violation of Penal Law § 125.27 (1) (a) (viii). That section provides in pertinent part that a person who is more than 18 years old is guilty of murder in the first degree when “[w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person; and * * * as part of the same criminal transaction * * * with intent to cause serious physical injury to or the death of an additional person or persons, [he or she] causes the death of an additional person or persons.” (Emphasis supplied.)
In the 20 counts charging that crime, the indictment accuses the defendant of having intentionally caused the death of five individuals as part of the same criminal transaction. Each count names two individuals, one as a “principal deceased,” i.e., the person intentionally killed in the criminal transaction, and the other as a “secondary deceased,” i.e., the “additional person” intentionally killed as part of the same criminal transaction.[1] Each individual killed is named as “principal deceased” in four counts, with each of those counts naming a different “secondary deceased.” And each individual killed is named as “secondary deceased” in four counts, with each of those counts naming a different “principal deceased.”
The defendant argues that, by its use of the words “additional person or persons,” the statute contemplates that the intentional killing of two or more persons as part of the same criminal transaction constitutes but a single crime. Therefore, *127 the defendant maintains, when such a multiple killing is charged in more than one count, as in the instant indictment, the counts are multiplicitous. Counts of an indictment are said to be multiplicitous when they separately charge the same crime (see, e.g., People v Kindlon, 217 AD2d 793, 795 [3d Dept 1995], lv denied 86 NY2d 844; People v Senisi, 196 AD2d 376, 378 [2d Dept 1994]).
The defendant contends that, because of the defect, all but one of the 20 counts must be dismissed, with the remaining count “encompass [ing] all five victims” and structured to make clear that, “for a finding of guilt, the jury need only to agree unanimously that the defendant intentionally caused the death of one of the individuals named and then caused the death of another of the individuals named.” The defendant adds that “[t]he jurors would have to be unanimous on the identity of each part of the pairing.” (See, defendant’s mem of law, motion No. 6, at 5, n 1.)
The defendant’s argument finds support in People v Fernandez (173 Misc 2d 938 [Sup Ct, Kings County 1997, Gerges, J.]) where the court concluded that three counts charging attempted murder in the first degree were multiplicitous. In Fernandez, the defendant was accused of having shot his wife and then having shot their three children. All of the victims survived. The defendant was indicted and charged, inter alia, with three counts of attempted murder in the first degree for attempting to kill his wife and children as part of the same criminal transaction (Penal Law §§ 110.00, 125.27 [1] [a] [viii]). Each count named the defendant’s wife as the “principal” intended deceased; each named a different child as the “secondary” intended deceased.[2]
The court reasoned that the statute’s use of the words “person or persons” indicated that murder in the first degree is “one continuing crime, beginning with the killing of the first person and continuing until the last person is killed” (173 Mise 2d, at 947). The court held that, when distinct acts together constitute but a single continuing crime, counts that separately charge those distinct acts are multiplicitous. Thus, the court directed either that the prosecution elect one count on which to proceed or that the three counts be consolidated.
I respectfully disagree with the suggestion that a multiple intentional killing in the same criminal transaction always *128 constitutes a single continuing crime which may never be charged in more than a single count.
In reaching its conclusion, the Fernandez court cited cases like People v First Meridian Planning Corp. (86 NY2d 608, 615-616 [1995]) and People v Shack (86 NY2d 529 [1995]) for the proposition that even conduct consisting of discrete acts may sometimes be treated and charged as a single continuing offense over time. In First Meridian, for example, the Court of Appeals rejected a claim that a count in an indictment charging scheme to defraud in the first degree was duplicitous because it alleged more than one offense (see, CPL 200.30 [1]). The Court wrote that “[w]here * * * a crime by its nature as defined in the Penal Law may be committed either by one act or by multiple acts and can be characterized as a continuing offense over time, the indictment may charge the continuing offense in a single count.”[3] The Court did not hold, however, that such a crime must be charged in a single count. And, in any event, I am strongly of the view that the sequential killing of more than two persons, committed as part of the same criminal transaction in violation of Penal Law § 125.27 (1) (a) (viii), does not constitute a single continuing offense over time (see, e.g., People v Harris, 177 Misc 2d 259, 263 [Sup Ct, Kings County 1998, Feldman, J.]).
The term “criminal transaction” as used in the statute has been held to mean “conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture” (CPL 40.10 [2] [emphasis supplied]; see, People v Reed, 265 AD2d 56, 66-67 [2d Dept 2000], lv denied 95 NY2d 832; cf. People v Mower, 280 AD2d 25 [3d Dept 2001], lv granted 96 NY2d 803). If a criminal transaction involves conduct establishing “at least” one offense, it follows that it may also involve conduct establishing more than one offense. The relevant definition of first degree murder, therefore, necessarily contemplates the possibility that the crime will be committed, not through a single and continuing offense, but through the *129 commission, as part of the same criminal transaction, of two or more separate and distinct offenses, each constituting an intentional murder.
In the instant case, the multiple killings charged were allegedly the product of such separate and distinct criminal acts committed in the course of a single criminal transaction. Each act is alleged to have been committed with an independent specific intent to cause the death of the individual victim. Because the killings resulted from “successive and distinguishable impulses, each able to support a separate charge” (People v Okafore, 72 NY2d 81, 87 [1988]), the conduct alleged in the first 20 counts does not constitute a single continuing offense (cf. People v Okafore, supra; Blockburger v United States, 284 US 299, 302 [1932]), and therefore need not be charged in a single count.[4]
Moreover, although the language of Penal Law § 125.27 (1) (a) (viii) seemingly permits an indictment to charge in a single count the intentional killing of more than two people as part of the same criminal transaction, it does not require it. And, in my view, not only is it unnecessary to charge the killings here in a single count as the defendant proposes, but it would be unwise.
As explained during oral argument on the motion, the defendant would have the court submit the single count to the jury with instructions that it return a special verdict reporting its findings on the defendant’s criminal responsibility for the deaths of each of the five named individuals allegedly killed as part of the same criminal transaction. And the defendant would have the court require that any jury finding with respect to an individual victim be unanimous because, in the defendant’s view, the intentional killing of each victim would constitute a separate element of the crime charged (see, e.g., Richardson v United States, 526 US 813 [1999]; cf. Schad v Arizona, 501 US 624, 651 [1991]). But there are serious problems with this approach.
To begin with, special verdicts, although commonplace in civil cases, are generally disfavored in criminal trials (see, e.g., People v Ribowsky, 77 NY2d 284, 290 [1991]; compare CPL *130 300.10 [4], with CPLR 4111; but see, CPL 310.50 [4] [prescribing a “special verdict” in prosecution for enterprise corruption]). More important, the proposal would have the court direct the jury to consider evidence relating to the defendant’s criminal responsibility for the intentional killing of all five of the named victims even though the intentional killing of any two as part of the same criminal transaction would be sufficient to support a guilty verdict on the count. Significantly, the defendant has cited no authority permitting the court in a criminal case to require the jury to make findings beyond what is necessary for a guilty or not guilty verdict.
In this case, the defendant concedes that the jury could lawfully return a guilty verdict on the proposed single count even if it unanimously determined only that the defendant had intentionally killed two of the five victims named in the count as part of the same criminal transaction.[5] Thus, the jury could conceivably find the defendant guilty notwithstanding its having rejected the prosecution’s evidence relating to the deaths of as many as three of the named victims, or its having never considered that evidence at all.
If, as the defendant maintains, the intentional killing of each of the five victims named in the count would constitute a separate element of the crime charged, the jury’s ability to convict while rejecting the People’s evidence relating to one or more of the named victims would mean that the defendant could be found guilty under the count notwithstanding the prosecution’s failure to prove one or more of the elements of the crime. That prospect is hard to reconcile with fundamental notions of due process (see, e.g., In re Winship, 397 US 358, 364 [1970]; Patterson v New York, 432 US 197, 210 [1977]; Sullivan v Louisiana, 508 US 275, 277-278 [1993]).
On the other hand, if the jury rendered a guilty verdict without ever having considered the People’s evidence relating to one or more of the named victims, criminal responsibility for their deaths would go unexamined. That, it seems to me, would be a result plainly at odds with any reasonable legislative intent, and, in this capital case, with the jury’s responsibility to weigh the seriousness of the defendant’s conduct in order to determine sentence.
*131 Nevertheless, the defendant insists that the indictment as structured compromises his constitutional right against double jeopardy in that it would wrongly put him at risk of multiple punishments. That danger does not seem immediately apparent, however, as the general rule in New York is that the killings of multiple victims through separate acts are independently punishable even if committed in the course of a single criminal transaction (see, e.g., People v Brathwaite, 63 NY2d 839, 842 [1984]; People v Truesdell, 70 NY2d 809, 811 [1987]; People v Valdez, 277 AD2d 262, 263 [2d Dept 2000], lv denied 96 NY2d 764; cf. People v Brown, 80 NY2d 361, 363 [1992]).
Moreover, it is far from certain that the defendant’s proposal would afford him greater protection than would the instant indictment as currently structured. Suppose, for example, that a single count naming all five victims was submitted to the jury with directions to return a special verdict reporting separately its unanimous findings as to the defendant’s criminal responsibility for the deaths of each individual victim. Suppose, further, that the jury finds unanimously and beyond a reasonable doubt that the defendant intentionally killed two of the named individuals as part of the same criminal transaction, but reports an inability to agree unanimously as to the other three. The defendant would be convicted under the count on the basis of his intentional killing of the two individuals, but it is not entirely clear that the verdict would stand as a bar to his reprosecution for the deaths of the other three victims (cf. Matter of Plummer v Rothwax, 63 NY2d 243 [1984]; Matter of Bairn v Eidens, 279 AD2d 787 [3d Dept 2001]; CPL 310.70 [2]).
All this is not to say, however, that the defendant has no legitimate reason for concern over the present form of the indictment. Even the extraordinary gravity of the intentional killing of five individuals as part of the same criminal transaction might, as the defendant fears, be inflated unfairly if the jurors were informed of the charges through the reading of 20 separate counts (cf. People v Getman, 188 Misc 2d 809, 811 [Chemung County Ct 2001, Buckley, J.]; People v Home, 121 Misc 2d 389, 393 [Sup Ct, Kings County 1983, Vinik, J.]).
Far more important, since the prosecution is seeking the death penalty, the structure of the indictment might, in the event of a conviction, unfairly compound the aggravating factors to be weighed at the sentencing proceeding in favor of a sentence of death.
Should the defendant be convicted of one or more counts of first degree murder committed in violation of Penal Law *132 § 125.27 (1) (a) (viii), the aggravating factor for each count would be the act of intentionally causing the death of the additional person named in the count — the “secondary deceased” — as part of the same criminal transaction (see, CPL 400.27 [3]). As earlier noted, each of the five individuals killed is named as “secondary deceased” in four separate counts of the indictment. Thus, under the indictment as structured, if the defendant were convicted of all 20 counts, the jury would arguably be entitled to consider the intentional killing of each individual deceased as four aggravating factors rather than one.
These concerns can be addressed, however, without a pretrial order either dismissing the first 20 counts or replacing them with a single count. Measures taken at trial and, if necessary, at the sentencing proceeding can avoid both the inflation of the gravity of the crimes and the compounding of aggravating factors.
Thus, restricting the portions of the indictment that may be read to the jury during trial (see, e.g., People v Harris, supra, 177 Misc 2d 259, 263, n 5 [Sup Ct, Kings County 1998, Feldman, J.]),[6] and limiting the number and structure of the counts submitted for jury consideration (cf. CPL 300.40 [6]),[7] should eliminate the danger that the gravity of the crimes will be unfairly inflated. And, in the event the defendant is convicted of first degree murder in violation of Penal Law § 125.27 (1) (a) (viii), any unfair compounding of aggravating factors can be *133 avoided through the limitation and careful framing of the aggravating factors submitted to the jury at the sentencing proceeding (cf. People v Harris, supra, at 263-264).
Accordingly, I find no compelling reason to conclude that the first 20 counts of the indictment should be dismissed or altered prior to trial on grounds of multiplicitousness.
II
The defendant next contends that the first 20 counts of the indictment must be dismissed on the ground that they are unconstitutionally vague and overbroad. Specifically, he challenges the alleged lack of definiteness of the term “criminal transaction” which is not defined in article 125 of the Penal Law.
The defendant’s argument on this point is foreclosed by binding precedent rejecting the identical contention (see, People v Reed, supra, 265 AD2d 56, 66-67 [2d Dept 2000], lv denied 95 NY2d 832; see also, People v Mower, supra, 280 AD2d 25 [3d Dept 2001], lv granted 96 NY2d 803). Moreover, at oral argument on the motion, defense counsel candidly stated: “I don’t think there is any dispute * * * that there was one transaction here and I believe we can tell that from the People’s bill of particulars, it is a robbery of Wendy’s, it occurred between 11:00 and 12:00 and all of the counts, even the way the 20 counts are arranged, they are all interlocking and it is clear it is one transaction.” (Transcript of oral argument on Oct. 10, 2001, at 33.)
Ill
The defendant maintains that the 21st count of the indictment, charging him with murder in the first degree committed in violation of Penal Law § 125.27 (1) (a) (vii), must be dismissed on the ground that the element of “robbery” is unconstitutionally vague and overbroad. The 21st count charges the defendant with having intentionally caused the death of Jean August “during the commission of the crime of robbery, and in the course of and in furtherance of such crime, or in the immediate flight therefrom.”
“Robbery” is a term defined by statute. Section 160.00 of the Penal Law provides:
“Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
*134 “1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
“2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.”
The defendant does not contend that this statutory definition is unclear. Instead, he complains that “[t]he ‘robbery’ element of first-degree felony-murder has not received a definitive definition from the high court of this State, and has, in fact, occasioned disparate charging practices by different District Attorneys” (defendant’s mem of law, motion No. 6, at 14). He points out that, in Kings County, the District Attorney has charged first degree felony murder in separate counts, each alleging a different degree of robbery as the underlying felony.
The fact that our Court of Appeals has not yet accorded “a definitive definition” to the term “robbery” in the context of first degree felony murder is of no moment. Terms defined by statute cannot be found unconstitutionally vague simply because they are used in a newly enacted provision and have not yet received “a definitive definition” from the state’s highest court in that context. Were it otherwise, no new criminal statute could ever pass constitutional muster.
Moreover, the statute in issue proscribes intentional killing by a defendant while “in the course of committing * * * and in furtherance of robbery” (see, Penal Law § 125.27 [1] [a] [vii]). The 21st count essentially tracks this language. The fact that the District Attorney of Kings County has chosen to charge the crime in separate counts, each premised on a different degree of robbery, does not implicate the validity of the instant indictment, but rather raises an issue for the affected defendants in Kings County to pursue (see, e.g., People v Hale, 173 Misc 2d 140 [Sup Ct, Kings County 1997, Tomei, J.] [striking a first degree murder count]; People v Harris, Sup Ct, Kings County, Feb. 17, 1998, Feldman, J., indictment No. 15265/96 [striking first degree felony murder counts as duplicative]).
IV
The defendant next argues that the 21st count of the indictment, charging first degree felony murder, and counts 30 through 34, charging second degree felony murder, must be dismissed on the ground that they are unconstitutionally vague and overbroad with respect to the element of “in the course of and in furtherance of.”
*135 As our Court of Appeals has said:
“A vagueness challenge involves a two-part analysis. First, it must be determined whether the statute in question is ‘sufficiently definite “to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute” ’ * * * Second, a statute ‘ “must provide explicit standards for those who apply them” so as to avoid “resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” ’ ” (People v Nelson, 69 NY2d 302, 307 [1987] [citations omitted]; see also, People v Bright, 71 NY2d 376 [1988].)
Moreover, “the vagueness doctrine does not adjudge the language of a criminal statute in the abstract, but rather in the ‘animating context of well-defined usage * * * and * * * court construction which determines its meaning’ ” (People v First Meridian Planning Corp., supra, 86 NY2d 608, 622 [1995]). In that regard, our courts have long held that a conviction for felony murder in New York requires a showing, not merely that the killing was coincident with the underlying felony, but that it was committed “in the attempted execution of the unlawful end * * * [and] in furtherance of the unlawful purpose.” (People v Wood, 8 NY2d 48, 51 [I960]; see also, People v Bornholdt, 33 NY2d 75, 82 [1973], cert denied sub nom. Victory v New York, 416 US 905.)
In the case at bar, the defendant stands accused of having forcibly stolen money at gunpoint in a restaurant, and having participated in the binding and fatal shooting of five of the restaurant’s employees in order that there be no surviving witnesses to the crime. In my view, the felony murder statutes, including the elements of “in the course of and in furtherance of,” as worded and as interpreted by the courts raise no danger of arbitrary or discriminatory application and are sufficiently definite to have given the defendant, and any other person of ordinary intelligence, fair notice that the charged conduct was forbidden.
Accordingly, I agree with the other New York courts that have examined the question, and I conclude that the counts of the indictment charging the defendant with felony murder, both first degree and second degree, are neither vague nor overbroad (see, e.g., People v Owens, 185 Misc 2d 490 [Sup Ct, Monroe County 2000, Egan, J.]; People v Gordon, 175 Misc 2d 67 [Sup Ct, Queens County 1997, Demakos, J.]; People v Mateo, 175 Misc 2d 192 [Monroe County Ct 1997, Connell, J.]).
*136 V
Finally, the defendant contends that the 21st count of the indictment must be dismissed because the statute upon which it is based, Penal Law § 125.27 (1) (a) (vii), is unconstitutional in that it is irrationally underinclusive. He maintains that the Legislature’s decision to include certain felonies, and not to include others, as predicates for first degree felony murder is irrational and without compelling justification.
As a general rule, a statute duly enacted by the Legislature is strongly presumed to be constitutional and will not be struck down as unconstitutional, especially by a trial court, unless the invalidity of the law is demonstrated beyond a reasonable doubt (cf. Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]; People v Pagnotta, 25 NY2d 333, 337 [1969]). In my judgment, the defendant has failed to make the requisite showing here (see, e.g., People v Owens, supra, 185 Misc 2d 490 [Sup Ct, Monroe County 2000, Egan, J.]; People v Mateo, supra, 175 Misc 2d 192 [Monroe County Ct 1997, Connell, J.]; People v Hale, supra, 173 Misc 2d 140 [Sup Ct, Kings County 1997, Tomei, J.]; People v Bell, Sup Ct, Queens County, May 18, 1998, Cooperman, J., indictment No. 128/97).
VI
For all the foregoing reasons, therefore, the defendant’s motion should be denied in all respects.

. The terms “principal deceased” and “secondary deceased” are used in this opinion solely in an attempt at clarity and carry no implication regarding the sequence of killings. The terms are not used in the indictment.

. Again, the terms “principal” and “secondary” are used in an attempt at clarity. They are not used in the statute or in the Fernandez opinion.

. In Shack, the Court held that, under the circumstances of the case, aggravated harassment in the second degree could be characterized as a continuing crime, and therefore it was not impermissible to charge the defendant in a single count with having made a series of harassing telephone calls over a six-month period.

. Notably, if the statutory definition of the crime required conduct committed with an overriding intent to kill more than one person, rather than multiple killings each committed with the specific intent to cause the death of the individual victim, a stronger argument could be made that the provision spells out a single continuing crime (cf. Braverman v United States, 317 US 49 [1942]).

. The defendant’s papers state that, “for a finding of guilt, the jury need only to agree unanimously that the defendant intentionally caused the death of one of the individuals named and then caused the death of another of the individuals named.” (Defendant’s mem of law, motion No. 6, at 5, n 1.)

. At oral argument on the motion, the lead prosecutor stated that he “never read[s] the entire indictment in its fullness or in part to a jury * * * [and that] it would be very poor practice on [his] part to read to a jury an indictment when [he] knowfs] that many of those counts are not going to be submitted.” (Transcript of oral argument on Oct. 10, 2001, at 37-38.)

. The New York State Assembly and Senate Bill Memorandum for chapter 1 of the Laws of 1995 states in pertinent part: “Section 18 amends subdivision (3) of Section 300.40 of the Criminal Procedure Law to provide that where a multiple count indictment contains concurrent counts of murder in the first degree, the court shall submit each such count. The bill leaves unchanged, however, subdivision (6) of Section 300.40. This subdivision provides that, notwithstanding any other provision of Section 300.40, the court is not required to submit any particular count if various conditions exist, including cases where selectivity of counts is necessary to avoid placing an unduly heavy burden upon the jury. This subdivision (6) would continue to be applicable to a court’s determination of whether to submit all counts of a first degree murder indictment.” (Reprinted in Historical and Statutory Notes, McKinney’s Cons Laws of NY, Book 10B, Correction Law art 22-B, Interim 2001-2002 Pocket Part, at 250; see also, Preiser, 1995 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 300.40, 2001-2002 Interim Supp Pamph, at 476.)