# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 4
Bank of America, N.A.,
     Appellant,
      v.
Andrew Kessler,
     Respondent,
et al.,
     Defendants.

Suzanne M. Berger, for appellant.
Charles Wallshein, for respondent.
American Legal and Financial Network et al.; USFN - America's Mortgage Banking Attorneys, amici curiae.

WILSON, J.:

The question presented here is whether the inclusion of concise and relevant additional information voids an otherwise proper notice to borrowers sent pursuant to Real Property Actions and Proceedings Law § 1304, thus barring a subsequently filed foreclosure action. We hold that it does not.

## I.

- 1 -

As a result of the "Great Recession" of 2007-2009, an estimated 6 million Americans lost their homes (Tomasz Piskorski & Amit Seru, *Debt Relief and Slow Recovery: A Decade After Lehman*, Working Paper 25403, National Bureau of Economic Research [December 2018], available at https://www.nber.org/papers/w25403 [last accessed Jan. 17, 2023]).  In the midst of that crisis, both chambers of the New York State Legislature voted unanimously to enact Governor Paterson's Program Bill (2008 NY Senate Bill S 8143-A, enacted as L 2008, ch 472), a portion of which is codified in RPAPL 1304.  Section 1304 (1) requires a "lender, assignee, or mortgage loan servicer" to send a notice 90 days before it may "commence[ ] legal action against [a] borrower."  That notice "shall include" several pages of specific text set out in that subdivision.  The prescribed template requires the lender to fill in certain information, including:

- How many days the borrower is in default;

- The total amount of the missed payments, penalties, and interest;

- A list of [five] government-approved housing counseling agencies in the borrower's area that provide free counseling, along with the explanation that the counselors are trained to help homeowners who are having problems making their mortgage payments;

- An encouragement to take immediate steps to try to achieve a resolution, with the disclaimer that the lender cannot assure a mutually agreeable resolution is possible;

- A warning that if the borrower fails to act within 90 days (or sooner if the borrower ceases to live in the home as the borrower's primary residence), the lender may commence legal action;

- A notification that the borrower has the right to remain in the home until the borrower receives a court order requiring the borrower to vacate; and

- A statement that the enclosure is not a notice of eviction (RPAPL 1304 [1]).

Section 1304 (2), added by the legislature in 2009 (*see* L 2009, ch 507, § 1-a), provides that 'the notices required by this section shall be sent . . . in a separate envelope from any other mailing or notice."[1]

Section 1304 was enacted to address the pre-foreclosure "lack of communication" between borrower and lender, which "often leads to needless foreclosure proceedings in cases where a foreclosure alternative might otherwise have been possible" (Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 472 at 10). The Senate Sponsor further explained that the required 90-day notice "urges borrowers to work with their lender or a housing counseling agency to address their situation," so as to "provide an opportunity for borrowers and lenders to try to reach a solution that avoids foreclosure" (Letter from Senator Hugh T. Farley to Kristin Rosenstein, July 31, 2008, Bill Jacket, L 2008, ch 472 at 6). However, section 1304 was not intended to extinguish a lender's right to foreclose: "if the borrower is unable to reach resolution with the lender in the prescribed time, the lender will have the opportunity to pursue legal action against the borrower" (*id.*).

---

[1] That language was added by the legislature in 2009 as part of legislation whose principal change was to expand the borrower protections of the 2008 law from only subprime home loans to all home loans.

In 2009, Mr. Kessler obtained a loan secured by a mortgage on his home.[2]  In September 2013, he defaulted on the loan, and has made no payments on it since. Following his default, Bank of America sent a notice to Mr. Kessler pursuant to RPAPL 1304. It is undisputed that Mr. Kessler received a seven-page notice containing all of the language required by the statute.  However, the last page of the notice included the following language, not found in section 1304:

> "Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.[3]
>
> "If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.
>
> "MILITARY PERSONNEL/SERVICEMEMBERS: If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-877-430-

---

[2] The mortgage was originally executed in favor of MLD Mortgage, Inc., and was later assigned to Bank of America.

[3] Mr. Kessler challenges neither the inclusion of this sentence, although it does not comprise part of the required statutory language, nor the minor variations Bank of America made to the statutory language—an inconsistency his argument for a bright-line rule fails to address and an implicit acknowledgement that some changes will not void the notice.

5434. If you are calling from outside the U.S., please contact us at 1-817-685-6491."

In 2017, Bank of America moved for summary judgment against Mr. Kessler. Mr. Kessler cross-moved to dismiss, arguing that the inclusion of the final two paragraphs in his notice, addressing bankruptcy status and military membership, violated section 1304's "separate envelope" provision. Supreme Court agreed and dismissed the complaint (*see* 2017 NY Slip Op 33343[U] [Sup Ct. Westchester County 2017]). The Appellate Division affirmed on the same ground, holding that including in the envelope sent to the borrower any language not required by the statute violates its separate envelope provision (*see* 202 AD3d 10 [2d Dept 2021]). The Appellate Division granted leave to appeal and certified the question of whether its order was properly made (*see* 2022 NY Slip Op 66274[U] [2d Dept 2021]).[4]

## II.

On this appeal, Bank of America challenges only the acceptance of the RPAPL 1304 defense by the courts below. In interpreting any statute, "our goal is to give force to the intent of the legislature and we therefore begin with the plain text—the clearest indicator of legislative intent. In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the legislature. We must also interpret a statute so as

---

[4] Because Supreme Court does not appear to have resolved defendant's request for attorney's fees, we treat that order as nonfinal and therefore deem it necessary to answer the Appellate Division's certified question (*see* NY Const, art VI, § 3 [b] [4], [5]; CPLR 5602 [b] [1]).

to avoid an unreasonable or absurd application of the law" (*see Lubonty v U.S. Bank N.A.*, 34 NY3d 250 [2019] [internal quotation marks and citations omitted]).

The operative statutory language here contains two requirements: (1) the notice "shall include" the specified language and information; and (2) the notice must be sent "in a separate envelope from any other mailing or notice" (RPAPL 1304 [1], [2]). As to the first requirement, subdivision (1) does not say that the notice must state *only* the cautionary language set forth in the statute, but rather that the notice "shall include" that language. Where the "natural signification of the words employed" "ha[s] a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add or take away from that meaning" (*Tompkins v Hunter*, 149 NY 117, 122-123 [1896]). The word "include" suggests that more can be added to the notice. As we explained in *Red Hook Cold Stor. Co. v. Department of Labor of State of N.Y.*, " '[i]ncluding' may be used to bring into a definition something that would not be there unless specified, or it may be used to show the meaning of the defined word by listing some of the things meant to be referred to, but not by such listing excluding others of the same kind" (295 N.Y. 1, 8 [1945]). Here, the notice indisputably contains all of the mandatory language set forth in the version of section 1304 (1) in effect at the time Bank of America commenced this action. The statute says that the notice "shall include" certain information; the notice here does so.

The question then is the constraint imposed by the requirement that the envelope not contain "any *other* mailing or notice." The bright line rule adopted by the lower courts effectively defines "any other mailing or notice" as "any additional material or information

whatsoever." Although it might be possible to read "other notice" as the lower courts did—such that any deviation from the statutory language, however minor, would void the notice—that interpretation would stand in great tension with "shall include," a phrase that contemplates the addition of something else. The statute must be given "a sensible and practical over-all construction, which . . . harmonizes all its interlocking provisions" (*Matter of Long v Adirondack Park Agency*, 76 NY2d 416, 420 [1990]). Application of a bright line rule here would require the use of a highly constrained definition of "other," where it is more appropriately read to mean mailings or notices "of a different kind." Here, "other mailing or notice" more aptly refers other kinds of notices, such as pre-acceleration default notices, notices disclosing interest rate changes to borrowers with adjustable-rate mortgages (12 CFR 1026.20 [c]), monthly mortgage statements (12 CFR 1026.41), or notices disclosing to the borrower a transfer of the loan servicer (12 CFR 1024.33 [b]) (*cf. People v First Meridian Planning Corp*., 86 NY2d 608, 619 [1995] [rejecting a narrow interpretation of "other securities" when such a reading "would conflict with the general remedial purposes of the securities laws"]).

A bright-line rule would also lead to nonsensical results. For example, had Bank of America sent the required statutory language verbatim, but added, "THIS IS EXTREMELY IMPORTANT, PLEASE PAY ATTENTION!", a bright-line rule would require that the notice be deemed void and the foreclosure action dismissed. Indeed, Mr. Kessler's failure to challenge either the inclusion of the Fair Debt Collection Practices Act (FDCPA) disclaimer or the minor variations in the statutory language (discussed *supra* n

3) stands as a tacit recognition that the notice need not consist exclusively of the statutory text.

More importantly, to the extent there is any ambiguity about how to interpret the statute, application of a bright-line rule would contravene the legislative purpose. RPAPL 1304 is a remedial statute that should be read broadly to help borrowers avoid foreclosure. In expanding the protections of RPAPL 1304 to all home loans, the legislature sought to reduce the number of foreclosures by allowing the parties to "attempt to work out the default 'without imminent threat of a foreclosure action' " (*CIT Bank N.A. v Schiffman*, 36 NY3d 550, 555 [2021], quoting Governor's Program Bill Mem No. 46R, Bill Jacket, L 2009, ch 507 at 10; *see also* Letter from Mayor of City of NY, Nov. 20, 2009, Bill Jacket, L 2009, ch 507 at 13 [noting that the bill was a "significant reform in ensuring that homeowners and tenants are aware of their rights upon being faced with the threat of foreclosure"]).  Prohibiting lenders from concisely informing borrowers of additional rights they may have to avoid foreclosure is manifestly at odds with that purpose.

Thus, we hold that accurate statements that further the underlying statutory purpose of providing information to borrowers that is or may become relevant to avoiding foreclosure do not constitute an "other notice."  The statutorily required language informs borrowers that they are at risk of losing their homes because they are in default.  It warns them that the lender may commence foreclosure proceedings if they fail to take any action to resolve the default within ninety days.  It assures them that they have the right to remain in their home until they receive a court order telling them to leave the property.  It provides them with the contact information for housing counseling agencies.  The subject matter of

the mandated language is thus a disclosure to the borrower of 1) the possibility of foreclosure, 2) the borrower's rights, and 3) the options available to the borrower to attempt to remedy the situation. That language serves the express statutory purpose of providing borrowers with information that may help them avoid foreclosure during a 90-day window established by that statute.

Here, the additional two paragraphs are directly related to the notice's subject matter and further the statutory purpose by informing certain borrowers of additional protections they may have beyond those identified in the statutory notice language. The paragraphs relate to and supplement the statutory language as applied to two distinct groups of borrowers, and thus make most sense and are most helpful when read together with the notice. In addition, the paragraph relating to bankruptcy proceedings may be particularly useful to avoid confusing borrowers who are subject to the automatic stay in bankruptcy court and to avoid potential violation of such stays by the lender (*see In re Ho*, 624 B.R. 748, 752-753 [Bankr ED NY 2021] [holding bankruptcy disclosure a relevant factor in determining 90-day notice did not violate an injunction against proceeding against discharged debt]). The added language is specifically directed at that concern: it states that if the borrower is in bankruptcy, the section 1304 notice "is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt." It thus functions as both a protection for lenders and an explanation to borrowers of additional rights they may have. Moreover, a bright-line rule against any additional language in the same envelope could conflict with certain disclosure requirements under federal law (*see e.g. CIT Bank, N.A. v Neris*, 2022 WL 1799479, 2022

US Dist LEXIS 99040 [SD NY, June 2, 2022, 18 Civ. 1551 (VM)]; *see also supra* n 3, discussing the inclusion of an FDCPA warning in the notice at issue here).

### III.

The Appellate Division's concern that a case-by-case analysis of section 1304 notices would involve "exactly the type of judicial scrutiny" of mortgage foreclosure correspondence that we rejected in *Freedom Mtge. Corp. v Engel* (202 AD3d at 17, citing 37 NY3d 1 [2021]) is misplaced.[5] In *Engel*, we held that acceleration of the mortgage debt is revoked by a voluntary discontinuance of a foreclosure action; we adopted that bright-line rule to avoid "an exploration into the bank's intent, accomplished through an exhaustive examination of post-discontinuance acts" (*id.* at 30). Determining whether additional language in a section 1304 notice is permissible requires no examination of intent or extrinsic evidence, but rather an objective facial determination of the language's relevance, truth, falsity, or potential to mislead or confuse.

By contrast, in *CIT Bank N.A. v Schiffman*, we held that lenders could prove mailing of a section 1304 notice by submitting either evidence of actual mailing or "proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature" (36 NY3d at 556). Instead of a bright-line rule, we adopted "a workable rule that balances the practical considerations underpinning the presumption [established by proof of a sender's routine business practice] against the need to ensure the

---

[5] For reasons unrelated to those before us now, *Engel* was recently legislatively overruled (*see* L 2022 ch 821 § 8-e).

reliability of [that practice] . . . in the context of notices mailed pursuant to section 1304" (*id.* at 558).

Consistent with our approach in *Schiffman*, we hold that section 1304 does not prohibit the inclusion of additional information that may help borrowers avoid foreclosure and is not false or misleading. This is a workable rule that balances the practical considerations of the lender and borrower in a way that best advances the clear statutory purpose. Where a lender includes false, misleading, obfuscatory, or unrelated information in the envelope together with the 1304 notice, courts may void such notices. But where, as here, the additional information was not false, misleading, obfuscatory, or unrelated, it should not render the notice void. A bright-line rule would be both unfair and contrary to the statutory purpose, as it would deprive borrowers of information that could help them avoid foreclosure and penalize lenders who attempt to ensure their customers are better informed. It could also result in windfalls to borrowers resulting from clerical errors and bona fide attempts by lenders to assist borrowers in avoiding foreclosure.

Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs, defendant Andrew Kessler's motion for summary judgment dismissing the complaint as against him denied, plaintiff's motion for summary judgment granted in accordance with this opinion, case remitted to Supreme Court for further proceedings, and certified question answered in the negative.

Order insofar as appealed from reversed, with costs, defendant Andrew Kessler's motion for summary judgment dismissing the complaint as against him denied, plaintiff's motion for summary judgment granted in accordance with the opinion herein, case remitted to

Supreme Court, Westchester County, for further proceedings, and certified question answered in the negative. Opinion by Judge Wilson. Acting Chief Judge Cannataro and Judges Rivera, Garcia, Singas and Troutman concur.

Decided February 14, 2023